FILED *Paid*

2009 JUN -9 P 2:01

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

(4)

1  Michael R. Reese (State Bar No. 206773)
   michael@reeserichman.com
2  Kim E. Richman
   kim@reeserichman.com
3  **REESE RICHMAN LLP**
   875 Sixth Avenue, 18th Floor
4  New York, New York 10001
   Telephone: (212) 579-4625
5  Facsimile: (212) 253-4272

ADR

6
7  *Attorneys for Plaintiff and the Proposed Class*

E-filing

8
9
10
11
12
13
14

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

C09  02563  HRL

| | |
|---|---|
| AMNON ROSEN, on behalf of himself and all others similarly situated, | Case No. _____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** Cal. Bus. & Prof. Code §17200 *et seq.* and §17500 *et seq.*, Cal. Civ. Code §1750 *et seq.*, Fraud, Unjust Enrichment. |
| vs. | |
| UNILEVER UNITED STATES, INC. | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

**BY FAX**

1    Plaintiff Amnon Rosen ("Plaintiff"), by and through his undersigned counsel, alleges the

2  following based upon his own personal knowledge and the investigation of his counsel. Plaintiff

3  believes that substantial evidentiary support will exist for the allegations set forth herein after a

4  reasonable opportunity for discovery.

5                                **NATURE OF THE ACTION**

6       1.      This is a proposed class action against Unilever United States, Inc. ("Unilever" or

7  "Defendant") for misleading consumers about the nutritional and health qualities of its product, "I

8  Can't Believe It's Not Butter!" ("Product" or "I Can't Believe It's Not Butter!").

9       2.      During the period from June 2004 to the present (the "Class Period"), Defendant

10  engaged in a wide-spread marketing campaign to mislead consumers about the nutritional and

11  health qualities of its Product. Specifically, Defendant made misleading statements that its Product

12  was nutritious, healthy to consume, and, consequently, better than similar products such as butter.

13  Defendant was motivated to mislead consumers in order to take away market share from competing

14  products and increase its own profits.

15      3.      Defendant conveyed this message through a multi-million dollar advertising

16  campaign that included print advertising and television commercials. Additionally, Defendant

17  stated prominently in bold-face type directly on the front and side of its Product containers that it

18  was **"Made with a Blend of Nutritious Oils."**

19      4.      This message that its Product is nutritious and healthy, however, is misleading and

20  deceptive because Defendant's Product contains a highly unhealthy, non-nutritious oil known as

21  *partially hydrogenated oil*.

22      5.      Partially hydrogenated oil is an artificial, man-made substance that has no nutritional

23  value and is known to cause a number of health problems, including coronary disease, heart attacks

24  and death. In fact, the health problems associated with partially hydrogenated oil are so wide-

25  spread and debilitating that doctors have compared the oil to poison and have advised consumers to

26  avoid any consumption of this oil. As stated in a review of the book "Poison in the Food –

27  Hydrogenated Oils":

28

The U.S. population is being slowly poisoned by a single ingredient deliberately added to the human food supply...the World Health Organization tried to outlaw this ingredient decades ago....hundreds of doctors, researchers and scientists are warning us about the detrimental health effects of this ingredient....[T]his substance causes cancer, birth defects, heart disease, diabetes and many other fatal diseases.

In fact, this substance causes a cell-by-cell failure of the human body by destroying the porosity and flexibility of healthy cell membranes. It's like tearing your body down from the inside out.

What ingredient am I talking about? Hydrogenated oils, of course. For decades, food companies...have lied to use about hydrogenated oils, telling us this disease-causing substance was not merely safe, but actually better for your health than other sources of fat like butter. But today, we know this was nothing more than a global deception, a hijacking of science by the food manufacturers in a blatant attempt to get people to buy their high-profit products like margarine, shortening and snack crackers.

See http://www.truthpublishing.com/poisonfood_p/yprint-cat21284.htm (last visited June 2, 2009).

## JURISDICTION AND VENUE

6.      This court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332(d), because the aggregate claims of the class exceed the sum or value of $5,000,000.00, and there is diversity of citizenship between the plaintiff, who, as alleged below, is a citizen of California, and Defendant, who, as alleged below, is a citizen of New Jersey.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(1) and (2). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false information regarding trans-fats, occurred within this district.  Plaintiff lives in this District and purchased "I Can't Believe It's Not Butter!" in this District.

## PARTIES

8.      Plaintiff Amnon Rosen ("Rosen" or "Plaintiff") is a citizen of California because Mr. Rosen is domiciled in Santa Clara County, California and has no intention of changing his domicile. During the Class Period, Mr. Rosen purchased "I Can't Believe It's Not Butter!" approximately once a month during the period June 2007 to April 2009 from various grocery stores such as Safeway, Lucky Supermarket and Albertsons that are located in the Sunnyvale, California area.

1  Plaintiff Rosen relied on the misleading and deceptive statements contained on the packaging of "I

2  Can't Believe It's Not Butter!" that it was **"Made with a Blend of Nutritious Oils"** as well as

3  Defendant's widespread advertising and marketing of "I Can't Believe It's Not Butter!" that

4  represented that the Product is nutritious and healthy. Based upon these misrepresentations, Mr.

5  Rosen reached the conclusion that "I Can't Believe It's Not Butter!" was in fact healthy and

6  nutritious and relied upon these representations in making his decision to purchase "I Can't Believe

7  It's Not Butter!". As stated herein, Defendant's representations are misleading and deceptive

8  because "I Can't Believe It's Not Butter!" is not nutritious or healthy as represented because it

9  contains dangerous, unhealthy, non-nutritious partially hydrogenated oil. Plaintiff Rosen suffered

10 injury in that he would not have paid money for the Product had these misrepresentations not been

11 made.

12       9.      Defendant Unilever is one of the world's largest consumer products companies.

13 Unilever describes itself on its website as a company "that creates leading food, home and personal

14 care products that make you feel good, look good and get more out of life." Defendant is based in

15 Englewood Cliff, New Jersey.

16                          **SUBSTANTIVE ALLEGATIONS**

17       10.     The presence of partially hydrogenated oil in food is a major health concern for all

18 Americans and has been cited as a leading cause of heart disease and death. For example, the

19 Harvard School of Medicine reports that:

20

21       A 1993 Harvard study strongly supported the hypothesis that intake of partially
         hydrogenated vegetables oils contributed to the risk of having a heart attack…It
22       lowers levels of high-density lipoprotein (HDL) particles, which scour blood
         vessels for bad cholesterol and truck it to the liver for disposal.  It also promotes
23       inflammation, an overactivity of the immune system that has been implicated in
         heart disease, stroke, diabetes, and other chronic conditions….This multiple-
24       pronged attack on blood vessels translates into heart disease and death.

25

26 *See* http://www.hsph.harvard.edu/nutritionsource/nutrition-news/transfats/ (last visited June 5, 2009)

27       11.     The report: "Poison in the Food – Hydrogenated Oils" also states the dangers of

28 hydrogenated oils as follows:

> Hydrogenated oils are poisons, in the sense that they were never intended for human consumption. They don't exist in nature. They're not found in any natural, raw, unprocessed foods at all. In fact, there is no nutritional requirement whatsoever in the human body for hydrogenated oils....
>
> These are the diseases and conditions caused by the consumption of hydrogenated oils...Heart disease, breast cancer, prostate cancer, colon cancer...high bad cholesterol/good cholesterol ratio, high blood sugar levels...tumor growth, progression of type 2 diabetes....

Adams, M.; *Poison in the Food: Hydrogenated Oils* (Truth Publishing, 2009).

12.     Unilever is one of the leading producers of soft spreads. Soft spreads are often used as a substitute for butter in cooking, baking and other food preparation. "I Can't Believe It's Not Butter!" is one of Unilever leading brands of soft spreads.

13.     Unilever has engaged in a widespread marketing campaign to portray "I Can't Believe It's Not Butter!" as nutritious, healthy and safe to eat. Unilever engaged in this misleading and deceptive marketing campaign to take away market share from products such as butter in order to increase Defendant's profits.

14.     For example, Unilever prominently states on the front and side of the packaging of "I Can't Believe It's Not Butter!" that it is **"Made With A Blend of Nutritious Oils"**:



15.     In combination with the misleading claims made on its packaging, Defendant has conducted multi-million dollar, widespread marketing campaigns to deceptively convey the message that its Product is nutritious and healthy. For instance, during the Class Period Defendant ran a marketing campaign entitled "Big Fat Truth" in which Defendant deceptively portrayed its Product as nutritious and healthy.  As part of the "Big Fat Truth" marketing campaign, Defendant states on its website that *"our soft spreads are a better nutrition option than butter because they are made with a blend of nutritious oils, including canola and soybean..."*.  Defendant also proclaims on its website that the Product is "made with nutritious plant oils like soybean and canola". *See* http://www.bigfattruth.org/Lies-and-Truths.aspx (last visited June 9, 2009).  As stated herein, these statements are deceptive and misleading given that "I Can't Believe Its Not Butter" contains dangerous, non-nutritious, unhealthy partially hydrogenated oil.

16.     Additionally during the Class Period, Defendant also conducted a marketing campaign for its Product called the "Now You Know Better" campaign.  The "Now You Know Better" campaign tells consumers that "I Can't Believe Its Not Butter!" is in fact better than butter, in that the Product is purportedly made from a blend of oils that are healthy and nutritious.  As stated herein, those statements are deceptive and misleading.

17.     As part of the "Now You Know Better" campaign, Defendant represents that its Product is good for a modern, healthy lifestyle and is better than butter and similar products used during the 1950's and early 1960's.

18.     For example, as part of the "Now You Know Better" marketing campaign, Defendant has run television commercials featuring an Ozzie and Harriet type-family from the 1950's named the "Buttertons".  The television commercial shows in black and white footage the 1950's family eating butter on food and compares this with colorized footage of a healthy modern family using "I Can't Believe its Not Butter".  The "Buttertons" television commercial represents that "I Can't Believe its Not Butter" is better than butter stating in a voice over and/or written text that "I Can't Believe its Not Butter" is "Made with a Blend of Nutritious Oils" and an "Excellent Source of Omega 3 ALA from Soybean and Canola Oils."

19.     Also as part of the "Now You Know Better" marketing campaign, Defendant has published pictures comparing people dressed in 1950's garb with people in modern day clothing. Through these advertisements, Defendant portrays "I Can't Believe Its Not Butter" as healthy and nutritious.  Specifically, Defendant states the follows in these advertisements (emphasis added):

Years ago, food was about filling stomachs, not watching waistlines.  Flavorful favorites were more important than smart recipes!  We worried about making sure food was tasty, and plates were licked clean!  However, those favorite meals that we made again and again were often high in saturated fats and cholesterol.  *Smart choices like the blend of nutritious oils in I Can't Believe It's Not Butter!* weren't an option, and neither was altering the ingredients in the family recipe.

But modern times call for modern dishes.  Today we like to try different recipes and new flavors in our favorite foods.  We can still lick our plates, but only if the recipe is made with better ingredients.  Now that we know better about saturated fat and cholesterol, we're able to make better choices.  *By including the blend of nutritious oils in I Can't Believe It's Not Butter! you can be confident that you made a smart meal!*

\*        \*        \*

Work-life balance seems almost like a fairy tale created by our friends in Human Resources.  One-stop-shopping at the local grocery store is necessary to keep our life running smoothly.  Somehow we still end up making last minute runs to the store in between work, home, friends, and family errands!  Since we know so much better now, shouldn't we have more free time?!  Today we have one or two large stores close by to stock up on favorite foods and staples.  *This is important because not only do we have to keep life balanced, but we need to keep a healthy balance in our meals too!  The blend of nutritious oils in I Can't Believe It's Not Butter! makes balance easy to achieve.*

\*        \*        \*

Parties back in the day were pretty formulaic: finger foods, cocktails and company.  Exciting themes were saved for the summer, when tropical drinks and tiki torches were broken out.  Gelatin-based salads and deserts were reserved for these special occasions.  The table was always set with the good (hand-wash only) crystal.  *Butter, higher in saturated fat, would have been set out to accompany the appropriate munchies.  Too bad I Can't Believe It's Not Butter! wasn't around!  With its blend of nutritious oils, it would have been a much better option to serve guests.*

\*        \*        \*

Birthdays should be celebrated big time!  And the older the age, the bigger the parties should be!  Forgo the boring dinner party or been-there-done-that-barbeque – there's enough of those hosted all year long.  Separate yourself from

the rest of the neighborhood by hosting memorable events. Set the tone of your party with a theme, and then set up activities and food to match. *And keep your friends' eating habits in mind. Serve them an excellent source of Omega 3 ALA and a blend of nutritious oils by having I Can't Believe It's Not Butter! on the table.* It's guaranteed that your guests will never forget an event at your house!

20.     As stated herein, these statements portraying "I Can't Believe It's Not Butter" as healthy and nutritious are misleading and deceptive because "I Can't Believe its Not Butter" is not in that it contains dangerous, unhealthy, non-nutritional partially hydrogenated oil.

## CLASS ALLEGATIONS

21.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all Californians who purchased I Can't Believe It's Not Butter during the Class Period (the "Class"). Excluded from the Class are officers and directors of the Defendant, members of the immediate families of the officers and directors of the Defendant, and their legal representatives, heirs, successors or assigns and any entity in which they have or have had a controlling interest.

22.     At this time, Plaintiff does not know the exact number of Class members, however, given the nature of the claims and the number of retail stores selling I Can't Believe It's Not Butter in California, Plaintiff believes that Class members are so numerous that joinder of all members of the Class is impracticable.

23.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

> a.  Whether Defendant labeled, marketed, advertised and/or sold "I Can't Believe It's Not Butter!" to Plaintiff and those similarly situated using false, misleading and/or deceptive statements or representations, including statements or representations concerning the nutritional and health qualities of its Product;
>
> b.  Whether Defendant omitted and/or misrepresented material facts in connection with the sales of its Product;

c. Whether Defendant participated in and pursued the common course of conduct complained of herein;

d. Whether Defendant's labeling, marketing, advertising and/or selling of its Product as healthy and nutritious  constitutes an unfair or deceptive consumer sales practice; and

e. Whether Defendant was unjustly enriched.

24.    Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased Defendant's Product in a typical consumer setting and sustained damages from Defendant's wrongful conduct.

25.    Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in litigating complex class actions.  Plaintiff has no interests which conflict with those of the Class.

26.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

27.    The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Civ. R. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

28.    The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions may be dispositive of the interests of the Class, although certain Class members are not parties to such actions.

29.    Defendant's conduct is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (Business and Professions Code § 17200, *et seq.*)

30.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

31.     Such acts of Defendant, as described above, and each of them, constitute unlawful, unfair and statutorily fraudulent business acts and practices under 17200.

32.     The business practices alleged above are unlawful under §17200, *et seq.* by virtue of violating the Consumers Legal Remedy Act, Cal. Civ. Code §1750, *et seq.* ("CLRA").

33.     The business practices alleged above are unlawful under §17200, *et seq.* by virtue of violating §17500, *et seq.*, which forbids untrue advertising and misleading advertising.

34.     Such acts of the Defendant, as described above, also constitute unfair business acts and practices under California Business and Professions Code sections § 17200, *et seq.*

35.     Such acts of the Defendant as described above also constitute fraudulent business practices under California Business and Professions Code sections § 17200, *et seq.*

36.     Plaintiff, and other members of the Class who purchased Defendant's Product, suffered a substantial injury by virtue of buying the Product they would not have purchased absent Defendant's unlawful, unfair and statutorily fraudulent marketing, advertising, packaging and labeling or by paying for the unlawfully, unfairly and statutorily fraudulent marketed, advertised, packaged and labeled Product.

37.     There is no benefit to consumers or competition by deceptively marketing, advertising, packaging and labeling its Product. Indeed, the harm to consumers and competition is substantial.

38.     The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and is immoral, unethical, unscrupulous, offends established public policy or is substantially injurious to Plaintiff and other members of the Class.

39.     As a result of the business practices described above, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct on the part of Defendant and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for the Product as a result of the wrongful conduct of the Defendant.

40.     The above-described business acts and practices of the Defendant present a threat and reasonable likelihood of deception to Plaintiff and members of the Class in that the Defendant has systematically perpetrated and continues to perpetrate such acts or practices upon members of the Class by means of its misleading manufacturing, marketing, advertising, packaging, labeling, distributing and selling of its Product.

41.     THEREFORE, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION

### (Business and Professions Code § 17500, *et seq.*)

42.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

43.     Plaintiff asserts this cause of action for violations of California Business and Professions Code §17500, et seq. for misleading and deceptive advertising against the Defendant.

44.     At all material times, Defendant engaged in a scheme of offering its Product for sale to Plaintiff and other members of the Class by way of, *inter alia*, commercial marketing and advertising, the World Wide Web (Internet), product packaging and labeling and other promotional materials. These materials misrepresented the nutritious and healthy qualities of the Product. Said advertisements and inducements were made within the State of California and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that such promotional materials were intended as inducements to purchase the Product and are statements disseminated by the Defendant to Plaintiff and the Class and were intended to reach members of the Class.   Defendant knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive.

45.     In furtherance of said plan and scheme, the Defendant has prepared and distributed within the State of California via commercial marketing and advertising, the World Wide Web (Internet), product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represent the true nutritional quality of the Product. Consumers, including Plaintiff, necessarily and reasonably relied on these materials concerning the Product. Consumers, including Plaintiff and the Class, were among the intended targets of such representations.

46.     The above acts of the Defendant, in disseminating said misleading and deceptive statements throughout the State of California to consumers, including Plaintiff and members of the Class, were and are likely to deceive reasonable consumers, including Plaintiff and other members of the Class, by obfuscating the true nutritional quality of the product, all in violation of the "misleading prong" of California Business and Professions Code § 17500.

47.     As a result of the above violations of the "misleading prong" of Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiff and the other members of the Class. Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order of this Court enjoining such future conduct on the part of the Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore to any person in interest any money paid for the Product as a result of the wrongful conduct of the Defendant.

48.     THEREFORE, Plaintiff prays for relief as set forth below.

## THIRD CAUSE OF ACTION

**(Consumers Legal Remedies Act - Cal. Civ. Code §1750, *et seq.*)**

49.     Plaintiff realleges and incorporates by reference the paragraphs stated above in this Class Action Complaint as set forth herein.

50.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.* (the "CLRA").  This cause of action does not seek monetary damages at this point, but is limited solely to injunctive relief. Plaintiff will amend this

Class Action Complaint to seek damages in accordance with the CLRA after providing the Defendant with notice pursuant to Cal. Civ. Code § 1782.

51. Defendant's actions, representations and conduct has violated, and continues to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of lease of goods or services to consumers.

52. Plaintiff and other Class Members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §1761(d).

53. The Product that Plaintiff and other members of the Class purchased were "goods" within the meaning of Cal. Civ. Code §1761(a).

54. By engaging in the actions, misrepresentations and misconduct set forth in this Class Action Complaint, Defendant has violated, and continues to violate, §1770(a)(7) of the CLRA. Specifically, in violation of Cal. Civ. Code § 1770(a)(7), Defendant's acts and practices constitute unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular standard, quality or grade of the goods.

55. By engaging in the actions, misrepresentations and misconduct set forth in this Class Action Complaint, Defendant has violated, and continues to violate, §1770(a)(16) of the CLRA. Specifically, in violation of Cal. Civ. Code §1770(a)(16), Defendant's acts and practices constitute unfair methods of competition and unfair or fraudulent acts or practices in that they represent that a subject of a transaction has been supplied in accordance with a previous representation when they have not.

56. Plaintiff requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code §1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the future, Plaintiff and other members of the Class will continue to suffer harm.

57. THEREFORE, Plaintiff prays for relief as set forth below.

**PRAYER FOR RELIEF**

THEREFORE, Plaintiff prays for judgment as follows:

- Certification of the Class, certifying Plaintiff as representative of the Class, and designating his counsel as counsel for the Class;

- A declaration that Defendant has committed the violations alleged herein;

- For restitution and disgorgement pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq.* and 17500, *et seq.*;

- For declaratory and injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq.* and 17500, *et seq.*;

- For declaratory and injunctive relief only pursuant to California Civil Code § 1780, as Plaintiff through this Complaint at this point expressly does not seek any monetary type of relief pursuant to the CLRA;

- An award of compensatory damages, the amount to be determined at trial;

- For punitive damages;

- For interest at the legal rate on the foregoing sums;

- For costs of suit incurred; and

- For such further relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: June 9, 2009                                 Respectfully submitted,

**REESE RICHMAN LLP**
Michael R. Reese
Kim E. Richman
875 Sixth Avenue, 18th Floor
New York, New York 10001
Telephone: (212) 579-4625
Facsimile: (212) 572-4272

*Attorneys for Plaintiff*