1   WILLIAM L. STERN (CA SBN 96105)
    WStern@mofo.com
2   JANELLE J. SAHOURIA (CA SBN 253699)
    JSahouria@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California  94105-2482
    Telephone: 415.268.7000
5   Facsimile: 415.268.7522

6   Attorneys for Defendant
    UNILEVER UNITED STATES, INC.
7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12  AMNON ROSEN, on behalf of himself and all        Case No.        CV 09-02563 JW
    others similarly situated,
13                                                    **NOTICE OF MOTION AND MOTION
                        Plaintiff,                    AND MEMORANDUM OF POINTS
14                                                    AND AUTHORITIES IN SUPPORT OF
             v.                                       DEFENDANT'S MOTION TO
15                                                    DISMISS PLAINTIFF'S COMPLAINT**
    UNILEVER UNITED STATES, INC.,
16                                                    [Declaration of D. Palmet, [Proposed]
                        Defendant.                    Order, and Request for Judicial Notice
17                                                    Filed Concurrently]

18                                                    Hearing Date:  March 1, 2010
                                                      Time:  9:00 a.m.
19                                                    Place:  Courtroom 8, 4th Floor
                                                      Judge:  Honorable James Ware
20                                                    Action Filed:  June 9, 2009

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3   TABLE OF AUTHORITIES...................................................................................... ii

4   NOTICE OF MOTION AND MOTION TO DISMISS ............................................. vi

5   MEMORANDUM OF POINTS & AUTHORITIES ................................................... 1

6   I.       INTRODUCTION ......................................................................................... 1

7   II.      STATEMENT OF THE ISSUES TO BE DECIDED ................................... 2

8   III.     FACTS ALLEGED BY PLAINTIFF............................................................ 2

9   IV.      THE LEGAL STANDARD ........................................................................... 3

10  V.       ARGUMENT ................................................................................................. 3

11           A.       Plaintiff's State-Law Claims Are Preempted. ..................................... 3

12                    1.       Express Preemption. .............................................................. 3

13                    2.       Dormant Commerce Clause. .................................................. 7

14           B.       The Court Should Abstain in Deference to the FDA. .......................... 8

15           C.       *Cel-Tech*'s Safe Harbor Bars Plaintiff's UCL and FAL Claims. ........ 9

16           D.       Defendant's Product Claims—"Nutritious Oils" and a Nutritious
                       Alternative to Butter—Are True. ........................................................ 9

17
             E.       Plaintiff's Affirmative Misrepresentation Claims Refer to Non-
18                    Actionable Puffery. ........................................................................... 11

19           F.       Plaintiff Has Not Pled His Claims with the Requisite Particularity.... 12

20           G.       Plaintiff Is Not Entitled to Injunctive Relief. .................................... 14

21           H.       The Court Should Strike Plaintiff's CLRA Damage Claim. ............... 15

22  VI.      CONCLUSION ........................................................................................... 15

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alfaro v. Cmty. Hous. Improvement Sys. & Planning Ass'n,*
171 Cal. App. 4th 1356 (2009) ............................................................................................... 13

*Animal Legal Def. Fund v. Mendes,*
160 Cal. App. 4th 136 (2008) ................................................................................................. 13

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) ..................................................................................................... 3, 15

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 127 S. Ct. 1955 (2007) ............................................................................... 3, 12

*Bourgi v. West Covina Motors, Inc.,*
166 Cal. App. 4th 1649 (2008) ............................................................................................... 13

*Caro v. Procter & Gamble Co.,*
18 Cal. App. 4th 644 (1993) ................................................................................................... 14

*Cattie v. Wal-Mart Stores, Inc.,*
504 F. Supp. 2d 939 (S.D. Cal. 2007) ................................................................................... 15

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
20 Cal. 4th 163 (1999) ............................................................................................................. 9

*Cook, Perkins & Liehe, Inc. v. N. Cal. Collection Serv. Inc.,*
911 F.2d 242 (9th Cir. 1990) ................................................................................................. 11

*Daugherty v. Am. Honda Motor Co.,*
144 Cal. App. 4th 824 (2006) ................................................................................................. 13

*Davis v. Chase Bank U.S.A., N.A.,*
No. CV 06-04804 DDP (PJWx), 2009 WL 2868817 (C.D. Cal. Sept. 3, 2009) .................... 15

*Desert Healthcare Dist. v. PacifiCare FHP, Inc.,*
94 Cal. App. 4th 781 (2001) ..................................................................................................... 7

*Farm Raised Salmon Cases,*
42 Cal. 4th 1077, 1086 (2008),
*cert. denied sub nom. Albertson's, Inc. v. Kanter,* 129 S. Ct. 896 (2009) ........................ 5, 6, 7

*Feitelberg v. Credit Suisse First Boston, LLC,*
134 Cal. App. 4th 997 (2005) ................................................................................................. 14

*Fraker v. KFC Corp.*,
   No. 06-CV-01284-JM (WMC), 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007) ................. 6, 11

*High Rd. Holdings, LLC v. Ritchie Bros. Auctioneers (Am.), Inc.*,
   No. 1:07-cv-4590, 2008 WL 450470 (N.D. Ill. Feb. 15, 2008) ............................... 11

*Hoey v. Sony Elecs. Inc.*,
   515 F. Supp. 2d 1099 (N.D. Cal. 2007) ................................................. 13

*In re Paxil Litig.*,
   218 F.R.D. 242 (C.D. Cal. 2003) ...................................................... 8

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ....................................................... 12

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ..................................................... 5, 14

*Korens v. R.W. Zukin Corp.*,
   212 Cal. App. 3d 1054 (1989) ......................................................... 8

*Laster v. T-Mobile USA, Inc.*,
   407 F. Supp. 2d 1181 (S.D. Cal. 2005) ............................................... 15

*Lockwood v. Conagra Foods, Inc.*,
   597 F. Supp. 2d 1028, 2009 U.S. Dist. LEXIS 10064 (N.D. Cal. 2009) ................... 5

*Long v. Hewlett-Packard Co.*,
   No. C 06-02816 JW, 2007 WL 2994812 (N.D. Cal. July 27, 2007) ....................... 13

*Lyons v. Coxcomb Inc.*,
   No. 08-CV-02047-H (CAB), 2009 WL 347285 (S.D. Cal. Feb. 6, 2009) ................... 12

*Mills v. Giant of Md., LLC*,
   441 F. Supp. 2d 104 (D.D.C. 2006),
   *aff'd on other grounds*, 508 F.3d 11 (D.C. Cir. 2007) ................................ 4

*Parrino v. FHP, Inc.*,
   146 F.3d 699 (9th Cir. 1988) ........................................................ 14

*Pelman v. McDonald's Corp.*,
   237 F. Supp. 2d 512 (S.D.N.Y. 2003) ................................................. 11

*Pike v. Bruce Church, Inc.*,
   397 U.S. 137 (1970) .................................................................. 7

*Puentes v. Wells Fargo Home Mortgage, Inc.*,
   160 Cal. App. 4th 638 (2008) ......................................................... 9

*Rubio v. Capital One Bank (USA), N.A.*,
    572 F. Supp. 2d 1157 (C.D. Cal. 2008) ................................................................. 9

*Stearns v. Select Comfort Retail Corp.*
    No. 08-2746 JF, 2009 WL 1635931 (N.D. Cal. June 5, 2009) ............................... 15

*Tylka v. Gerber Prods. Co.*,
    No. 96 C 1647, 1999 WL 495126 (N.D. Ill. July 1, 1999)..................................... 11

*Von Grabe v. Sprint PCS*,
    312 F. Supp. 2d 1285 (S.D. Cal. 2003) ................................................................ 15

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) .................................................................*passim*

*Wolfe v. State Farm Fire & Cas. Ins. Co.*,
    46 Cal. App. 4th 554 (1996) ................................................................................. 8

*Wright v. Gen. Mills, Inc.*,
    No. 08cv1532 L(NLS), 2009 WL 3247148 (S.D. Cal. Sept. 30, 2009) ................. 5, 12, 13, 14

*Wyeth v. Levine*,
    129 S. Ct. 1187 (2009) .......................................................................................... 6

STATUTES AND REGULATIONS

21 U.S.C.
    § 301 ................................................................................................................... 3
    §§ 341 *et seq.* .................................................................................................... 3
    § 343-1(a)(3) ....................................................................................................... 4
    § 343-1(a)(4) ....................................................................................................... 4
    § 343-1(a)(5) ....................................................................................................... 6
    § 343(q)(1)(A)-(D) .............................................................................................. 4
    § 343(q)(ii) .......................................................................................................... 5
    § 343(q)(5)(A)(i), (ii) .......................................................................................... 4
    § 343(r) ............................................................................................................ 4, 6

21 C.F.R.
    § 100.1(c)(4) ........................................................................................................ 5
    § 101.9(c)(2)(ii) ................................................................................................ 4, 6
    § 101.13(i)(3) ....................................................................................................... 5
    § 101.13(j) .......................................................................................................... 11

64 Fed. Reg. 62746 (Nov. 17, 1999) ........................................................................... 8

68 Fed. Reg. 41434 (July 11, 2003) ......................................................................... 6, 8

68 Fed. Reg. 41507 (July 11, 2003) ........................................................................... 8

72 Fed. Reg. 66103 (Nov. 27, 2007) ........................................................................................ 10

Cal. Bus. & Prof. Code
    §§ 17200 *et seq.*..................................................................................................................... 1
    §§ 17500 *et seq.*..................................................................................................................... 1

Cal. Civ. Code
    §§ 1750 *et seq.*....................................................................................................................... 1
    § 1782(a)................................................................................................................................ 15

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on March 1, 2010, at 9:00 a.m. or as soon thereafter as the motion may be heard, in Courtroom 8, 4th Floor of this Court, located at 280 South First Street, San Jose, CA 95113-3099, Defendant Unilever United States, Inc., will and hereby does move this Court for dismissal of the Plaintiff's entire Complaint, Causes of Action One, Two, and Three, with prejudice and without leave to amend.  This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, the pleadings and papers on file herein, and such other matters as may be presented to the Court at the time of the hearing.

Dated: November 30, 2009

WILLIAM L. STERN
JANELLE J. SAHOURIA
MORRISON & FOERSTER LLP

By:  /s/ William L. Stern
William L. Stern

Attorneys for Defendant
UNILEVER UNITED STATES, INC.

## MEMORANDUM OF POINTS & AUTHORITIES

## I.      INTRODUCTION

This is a "Private Surgeon General" case.  Plaintiff Amnon Rosen ("Rosen") alleges that every Californian who bought the product "I Can't Believe It's Not Butter!"® for the last four years should get a refund.  He charges defendant Unilever United States, Inc. ("Unilever") with false advertising and asserts both an affirmative misrepresentation and an omission.  He contends that the statement on the label "Made With A Blend of Nutritious Oils" is false because the product is made with partially hydrogenated vegetable oil, which contains trace amounts of trans fatty acids ("TFAs").  His omission claim is that Unilever publicizes the product as "healthy and nutritious" but fails to disclose that TFAs are "dangerous, unhealthy, [and] non-nutritious."  From these twin foundations he hopes to erect three state-law claims.[1]

Rosen's claims do not withstand scrutiny and should be dismissed.  First, the U.S. Food and Drug Administration ("FDA") has prescribed exactly how a manufacturer "shall" disclose TFAs on its products.  All of Rosen's claims are expressly preempted.  Second, the phrase "nutritious oils" is true on its face.  All of the oils are common food ingredients that are generally recognized as safe and contribute nutritive value to the diet.  Third, the "nutritious oils" phrase is non-actionable puffery in that it merely highlights the fact that oils are foods that provide nutritive value to the diet.  In short, what Rosen complains about is either perfectly lawful or entirely true.

Therein lies the problem.  Rosen seeks damages and an injunction mandating a special warning label for food products that contain trace amounts of TFAs below the FDA's mandatory disclosure threshold.  But a "Rosen" warning would be different from what the FDA has considered in its rule-making authority and mandated, and beyond what Congress or any regulator has required.  Rosen is a self-appointed "Private Surgeon General," and is saying:  "I get to do the mandating."  Worse, because he purports to bring this case as a California class

---

[1] He sues for violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; its False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*

1   action, he is asking this Court to fashion a product-labeling law that would be unique to

2   California.

3        Rosen's claims lack legal merit and are tardy besides.  Months before he sued, Unilever

4   had already begun the process of reducing the levels of TFAs in the product.

5        The Court should dismiss the Complaint under Rule 12(b)(6), with prejudice.[2]

**II.    STATEMENT OF THE ISSUES TO BE DECIDED**

1.    **Express Preemption/Dormant Commerce Clause.**  Are state-law claims expressly preempted by the Nutrition Labeling and Education Act if they seek to impose disclosures about TFAs "not identical to" disclosures the FDA has mandated?  Would this imposition violate the dormant Commerce Clause?

2.    **Equitable Abstention.**  Is the subject of product labeling of trace amounts of TFAs sufficiently complex that a court should abstain in deference to the FDA?

3.    ***Cel-Tech* Safe Harbor.**  Is there a "safe harbor" defense to a claim brought under the UCL where the product label as to TFAs complies with federal law?

4.    **Truth.**  Is the phrase "Made With A Blend of Nutritious Oils" true if the product contains common food oils found by the FDA to have nutritive value?

5.    **Puffery.**  Is that phrase non-actionable puffery?  What about the claim that the product is a healthy alternative to butter?

6.    **Pleading Deficiencies.**  Is a plaintiff who claims to have been misled by product labeling or advertising required to plead his claim with particularity?

7.    **Injunction Moot.**  Is a claim for injunction moot if before the lawsuit was filed the manufacturer had already begun the process of reducing the already low levels of the allegedly offensive ingredient and changing the product label and advertising?

8.    **Untimely Thirty-Day Letter.**  If a plaintiff fails to send a statutory "thirty-day letter" before filing suit, is the plaintiff barred from seeking damages under the CLRA?

**III.    FACTS ALLEGED BY PLAINTIFF**

     According to Plaintiff's Complaint, Unilever is the manufacturer of "I Can't Believe It's

Not Butter!"® ("ICBINB!").  (Complaint ("Compl.") ¶ 1.)  Rosen bought ICBINB! once a month

---

     [2] Although not the subject of this brief, it should be noted that Plaintiff has named the wrong Unilever entity as a defendant.  The correct entity is Conopco, Inc. dba  Unilever. Unilever United States, Inc. is not the proper party because it does not produce or advertise the products at issue in this case.  The parties will try to resolve this issue by stipulation.

1   for several years.  (*Id.* ¶ 8.) [3]  He alleges that Unilever falsely advertised ICBINB! as a "healthy

2   and nutritious" product and a good alternative to butter when, in fact, it contains TFAs, a

3   substance he says is "dangerous, unhealthy, [and] non-nutritious."  (*Id.*)  He also dislikes

4   ICBINB!'s label, which states that the product is "Made With A Blend of Nutritious Oils."  (*Id.*)

5        In "making his decision" to purchase ICBINB!, Rosen claims to have relied on the

6   package statement that the product is "Made With A Blend of Nutritious Oils" as well as adver-

7   tising indicating that ICBINB! is a healthy product.  (*Id.*)  He claims he "would not have paid

8   money for the Product had these misrepresentations not been made."  ( *Id.*)  He does not allege

9   any adverse health effects; his only injury is that he wants his money back.  (*Id.*)

10        Rosen prays for injunctive relief, restitution, disgorgement, compensatory and punitive

11   damages, and attorneys' fees.  (*Id.* at p. 13.)  He seeks a class of California residents.  (*Id.* ¶ 21.)

12   **IV.    THE LEGAL STANDARD**

13        Under Rule 12(b)(6), dismissal of a case is warranted if the complaint lacks "'enough

14   facts to state a claim to relief that is plausible on its face.'"  *Williams v. Gerber Prods. Co.*,

15   552 F.3d 934, 938 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.

16   Ct. 1955, 1974 (2007)).  "Factual allegations must be enough to raise a right to relief above the

17   speculative level."  *Twombly*, 550 U.S. at 555.  A court does not have to accept as true any legal

18   conclusions.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).

19   **V.    ARGUMENT**

20        **A.    Plaintiff's State-Law Claims Are Preempted.**

21            **1.    Express Preemption.**

22        The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 ("FFDCA") establishes a

23   comprehensive federal scheme of food regulation to ensure that food is safe and is labeled in a

24   manner that does not mislead consumers. 21 U.S.C. §§ 341 *et seq*.  The Nutrition Labeling and

25   _____

26        [3] In the Complaint, Plaintiff refers to the ICBINB! product and to purchasing twenty-three units of ICBINB! but does not clarify the type or variety.  Because Plaintiff's Complaint includes

27   a picture of a container of "ICBINB! Original" (Compl. ¶ 14), this Memorandum and these arguments relate to that product label.

28

1   Education Act of 1990 ("NLEA") amended the FFDCA to require uniform food labeling and

2   require the now-familiar "Nutrition Facts" box that appears on food product labels.  *See* 21 U.S.C.

3   § 343(q)(1)(A)-(D).

4        In 2003, the FDA issued a regulation governing the proper disclosure of TFA levels in

5   foods.  So long as the product contains less than 0.5 gram per serving, under certain

6   circumstances, a manufacturer need not set forth the TFA content.  Moreover, below 0.5 gram,

7   the manufacturer "shall"—not may, "shall"— state in the Nutrition Facts box that the product

8   contains "zero" grams of TFAs:

9           A statement of the number of grams of *trans* fat in a serving . . . is
            not required for products that contain less than 0.5 gram of total fat
10          in a serving if no claims are made about fat, fatty acid or cholesterol
            content. . . . *Trans* fat content shall be indented and expressed as
11          grams per serving to the nearest 0.5 (1/2)-gram increment below 5
            grams and to the nearest gram increment above 5 grams.  *If the*
12          *serving contains less than 0.5 gram, the content, when declared,*
            *shall be expressed as zero*.

13

14   21 C.F.R. § 101.9(c)(2)(ii) (emphasis added).

15        The NLEA Amendments to the FFDCA include a broad express preemption provision that

16   governs product labeling.  21 U.S.C. § 343-1(a)(3); *see Mills v. Giant of Md., LLC*, 441 F. Supp.

17   2d 104, 106-09 (D.D.C. 2006) (noting the breadth of NLEA preemption clause), *aff'd on other*

18   *grounds*, 508 F.3d 11 (D.C. Cir. 2007).  The NLEA provides that no state may "directly or

19   indirectly establish . . . any requirement for the labeling of food that is *not identical to* the

20   requirement of section 403(q) [21 U.S.C. § 343(q)]" (emphasis added).[4]  A similar provision

21   applies to section 403(r), 21 U.S.C. § 343(r).

22        "Not identical to" is Rosen's undoing.  It refers to any "State requirement [that] directly or

23   indirectly imposes obligations or contains provisions concerning the composition or labeling of

24   food" that are "not imposed by or contained in the applicable provision" or "differ from those

25   ─────────────────

26   [4] The statute then goes on to recite an exception not relevant here.  21 U.S.C. § 343-
     1(a)(4).  The exemption from NLEA express preemption applies to nutrition labeling of food that
27   is exempt under sub-clause (i) or (ii) of section 403(q)(5)(A), codified at 21 U.S.C.
     § 343(q)(5)(A)(i), (ii).

28

1   specifically imposed by or contained in the applicable provision." 21 C.F.R. § 100.1(c)(4). Thus,

2   a state may impose labeling requirements *only if* the state requirements are "identical to" the

3   FDA's. *Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1086 (2008), *cert. denied sub nom.*

4   *Albertson's, Inc. v. Kanter*, 129 S. Ct. 896 (2009).

5          Here, the ICBINB! label that Rosen assails states "0 g Trans Fat per serving," and the

6   Nutrition Facts box also states "0 g Trans Fat."[5] Plaintiff do not allege that the products contain

7   TFAs in amounts that *exceed* the FDA's "half a gram" threshold, nor do they allege that the labels

8   violate the FDA labeling rules. Thus, Plaintiff is necessarily attacking Unilever's product labels

9   that comply with—or, at least, Plaintiff cannot allege violates—the FDA's regulation.

10         This is not a case of "implied" preemption. Unilever does not contend that Congress has

11  "occupied the field" as to every claim of product labeling. For example, there is no implied

12  preemption of a claim attacking artificial coloring in food products (*Farm Raised Salmon*, 42 Cal.

13  4th at 1091) or statements that a product is "all natural" (*Lockwood v. Conagra Foods, Inc.*,

14  597 F. Supp. 2d 1028, 1031-32, 2009 U.S. Dist. LEXIS 10064, at *7-8 (N.D. Cal. 2009)), or

15  "100% natural." *Wright v. Gen. Mills, Inc.*, No. 08cv1532 L(NLS), 2009 WL 3247148, at *2-3

16  (S.D. Cal. Sept. 30, 2009) (Lorenz, J.).

17         TFA disclosures are different. Congress has acted to regulate TFA disclosures through

18  two separate statutory provisions. The first is the FDA's "half gram" regulation quoted at pages

19  4-5, above. It is set forth in 21 C.F.R. § 101.9(c)(2)(ii) and is promulgated pursuant to 21 U.S.C.

20  § 343(q)(ii), which governs the declaration of trans fat in the "Nutrition Facts" box. The second

21  is the FDA regulation that governs the declaration of nutrients elsewhere on the food label,

22  outside the "Nutrition Facts" box. This is set forth in 21 C.F.R. § 101.13(i)(3), promulgated

23

24

25         [5] The Court may properly consider the product label because Rosen attaches a photograph
    of the ICBINB! label to his Complaint. (Compl. ¶ 14.) Because the photograph is incomplete
26  and of poor quality, Unilever attaches a legible copy as Exhibit A to the Request for Judicial
    Notice in Support of Defendant's Motion to Dismiss ("RJN"). The Court may properly take
27  judicial notice of the product label. *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005).

28

1    pursuant to 21 U.S.C. § 343(r).[6]  Claims under both FDA regulations are subject to preemption

2    under 21 U.S.C. § 343-1(a)(4) and (5).

3         Unlike "artificial food coloring" on which Congress has not spoken, Congress *has* spoken

4    on TFA labeling.  Thus, claims seeking to impose requirements that are "not identical to" the

5    FDA's requirements are expressly preempted.  *Farm Raised Salmon*, 42 Cal. 4th at 1097-98.

6         The California Supreme Court has implicitly recognized that TFA labeling claims are

7    expressly preempted.  In *Farm Raised Salmon* it distinguished non-preempted "artificial food

8    coloring" claims from the TFA claims alleged in *Fraker v. KFC Corp.*, No. 06-CV-01284-JM

9    (WMC), 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007).  *Fraker* involved TFA-based claims

10   against Kentucky Fried Chicken that mirror Rosen's claims in this case.  The plaintiff "alleg[ed]

11   that the defendant misrepresented its product as healthy when it was in fact high in 'trans' fat

12   content."  *Farm Raised Salmon*, 42 Cal. 4th at 1097.  But according to the California Supreme

13   Court, *Fraker* properly dismissed those claims because they "were impermissibly founded on

14   violations of the FDCA and were thus preempted by section 337."  *Id.* (citing *Fraker*, 2007 WL

15   1296571, at *3-4).  Rosen's TFA claims are indistinguishable from the TFA claims alleged in

16   *Fraker*.

17        That TFA claims are expressly preempted spells doom for Rosen's affirmative and non-

18   disclosure claims.  For a court to require a label denoting any number *other than zero* as the level

19   of TFAs would be "not identical to" 21 C.F.R. §§ 101.9(c)(2)(ii) and 101.13(i)(3) if, as here, the

20   actual level is already below the FDA's "half gram" threshold.  And for a court to require that

21   Unilever make some *other* type of disclosure informing consumers that its product contains

22   ingredients associated with increased blood cholesterol levels would be repetitive, the labels do

23   this already—by the accurate disclosure of saturated fat levels.  That, too, is "not identical to"

24

25

26
_____

27        [6] "[A]gency regulations with the force of law can preempt conflicting state requirements."
     *Wyeth v. Levine*, 129 S. Ct. 1187, 1200 (2009).

28

1   what the FDA has decreed.  In short, there are no claims Plaintiffs have pled that are not

2   preempted.[7]

3       The Court should dismiss all of Rosen's claims as expressly preempted by the FFDCA.

4       **2.      Dormant Commerce Clause.**

5       Even if not preempted, Plaintiff's claims violate the "dormant Commerce Clause."  In

6   *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970), the Supreme Court held that a

7   nondiscriminatory law with only "incidental" effects on interstate commerce was unconstitutional

8   because the burden was still "clearly excessive in relation to the putative local benefits."[8]

9       Here, the burden on Unilever would be enormous.  If successful, Rosen will Balkanize

10  TFA labeling rules—one set of rules for California that *he* prescribes and another prescribed by

11  the FDA for everyone else.  Yet, "the NLEA was enacted in 1990 primarily to establish a *national*

12  *uniform labeling standard* in place of the patchwork of different state standards that existed at the

13  time." *Farm Raised Salmon*, 42 Cal. 4th at 1091 n.12 (emphasis added).

14      The Court might rightly ask Plaintiff, to what end?  The ingredients and levels of TFAs

15  are already prominently displayed on the label in exactly the manner the FDA requires.  Under

16  *Pike*, the damages Rosen seeks for perfectly lawful conduct and the additional court-mandated

17  labeling requirements he seeks (*see* Compl. ¶ 46) would impose a burden that is "clearly

18  excessive" when measured against the local benefits, if any, of informing California consumers

19  differently about a product ingredient than the FDA, after extensive study, has approved.

20

21

22  _____

23      [7] *See* 68 Fed. Reg. 41434, 41498 (July 11, 2003) (explaining the FDA's stance that
    "Section 403A(a)(4) of the act (21 U.S.C. 343-1(a)(4)) displaces both state legislative
24  requirements and state common-law duties" (citing *Medtronic v. Lohr*, 518 U.S. 470, 503
    (1996))).  (*See* RJN, Ex. D.)

25      [8] In *Pike v. Bruce Church*, the Supreme Court overturned an Arizona law requiring fruit
    grown there to be packed in a certain way, which would have required the appellee to build a
26  $200,000 facility.  "Such an incidental consequence of a regulatory scheme could perhaps be
    tolerated if a more compelling state interest were involved," the Court wrote, but it found the state
27  interest (though legitimate) "tenuous" and "minimal at best."  397 U.S. at 145-46.

28

**B.      The Court Should Abstain in Deference to the FDA.**

In the alternative, the Court should abstain.  Courts typically decline equitable relief if it would entangle them in a complex area that is already subject to oversight by an agency having day-to-day supervision responsibilities.  *See Desert Healthcare Dist. v. PacifiCare FHP, Inc.*, 94 Cal. App. 4th 781, 794-96 (2001); *see also Korens v. R.W. Zukin Corp.*, 212 Cal. App. 3d 1054, 1059 (1989); *Wolfe v. State Farm Fire & Cas. Ins. Co.*, 46 Cal. App. 4th 554, 568 (1996).  Here, the FDA is still investigating and evaluating whether, and how, it might further regulate label declaration of TFAs.  68 Fed. Reg. 41507 (July 11, 2003) (advance notice of proposed rulemaking to solicit information that could be used to establish new nutrient content claims about trans fatty acids, and to establish qualifying criteria for trans fat in current nutrient content claims for saturated fatty acids and cholesterol); 64 Fed. Reg. 62746 (Nov. 17, 1999) (proposed rule governing, among other things, trans fat limits for nutrient content claims, health claims, or disclosure and disqualifying levels; and the proposed definition for the nutrient content claim "trans fat free").  (*See* RJN, Exs. E, F).

In a class action case arising on similar facts, Judge Pfaelzer declined to certify state-law claims under the UCL in which plaintiffs sought an injunction against a defendant drug manufacturer's allegedly false advertising of its drug Paxil.  *In re Paxil Litig.*, 218 F.R.D. 242 (C.D. Cal. 2003).  Said the court:  "Plaintiffs would use the Court as a forum to challenge and to second-guess the FDA's prior approval of Paxil's safety and efficacy, with the significant claim that a jury must be the final arbiter of Paxil's safety."  *Id.* at 248.  Transpose "safety and efficacy" to TFA food labeling and the *Paxil* court could have been speaking of Plaintiff's complaint.

The debate over the relative benefits of butter versus other fats is ongoing and raises numerous complexities.  The FDA, in its final rule report referenced the 1995 Dietary Guidelines for Americans, a joint publication from the U.S. Department of Health and Human Services and the U.S. Department of Agriculture, which noted that TFAs "may raise blood cholesterol levels, *although not as much as saturated fat*."  68 Fed. Reg. 41434, 41442 (July 11, 2003) (emphasis added).  (*See* RJN, Ex. G)  "Butter" is a "saturated fat."

1    There are no simple answers.  Rather, the choice is highly dependent on each individual's

2    age, weight, overall health, and other coronary risk factors.

3        Even if these claims are not preempted, the Court should abstain.

4        **C.    *Cel-Tech*'s Safe Harbor Bars Plaintiff's UCL and FAL Claims.**

5        The California Supreme Court has instructed that if a legislative or regulatory body has

6    affirmatively permitted certain conduct, courts may not override that determination.  A court

7    should not make illegal that which the Legislature or a regulatory agency has expressly allowed.

8    *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999).

9        Examples abound.  A mortgage lender's use of an "equal months" interest calculation did

10   not violate the UCL where the Federal Reserve Board's Regulation Z required it.  *Puentes v.*

11   *Wells Fargo Home Mortgage, Inc.*, 160 Cal. App. 4th 638, 644-46 (2008); *see also Rubio v.*

12   *Capital One Bank (USA), N.A.*, 572 F. Supp. 2d 1157, 1168 (C.D. Cal. 2008) (bank's credit card

13   disclosures that comply with Truth in Lending Act cannot violate UCL).

14       Unless Rosen is prepared to allege that Unilever's labels *violate* FDA regulations—which

15   he cannot do without trespassing Rule 11—the Court must presume that the product labels

16   proclaiming "0 g Trans Fat" comply with the NLEA.  By *complying* with federal law they cannot

17   *violate* state law.

18   19    **D.    Defendant's Product Claims—"Nutritious Oils" and a Nutritious Alternative to Butter—Are True.**

20       Plaintiff next assails Defendant's claims that ICBINB! is "Made With A Blend of

21   Nutritious Oils" and that it is a healthy alternative to butter.  These claims presume the

22   statements' falsity because of a claimed *omission*, namely, Unilever's alleged failure to specify

23   the exact perserving quantum of TFAs.  We have already discussed why these claims are

24   preempted because they seek to require "not identical" TFA labeling.  They also happen to be

25   true.

26       The Ninth Circuit has instructed that "the primary evidence in a false advertising case is

27   the advertising itself."  *Williams*, 552 F.3d at 938 (citing *Brockey v. Moore*, 107 Cal. App. 4th 86,

28   100 (2003)).  Here, the statement on the product label "Made With A Blend of Nutritious Oils*"

is followed by an asterisk that directs the reader to this nearby disclosure—"*Excellent Source of Omega 3 ALA." (*See* RJN, Ex. A.)  Clearly, "nutritious oils" is not an abstract statement untethered to anything else but, rather, a specific reference to the adjacent representation about "Omega 3 ALA."  That statement shows the truth of the "nutritious" claim.

"Omega 3" refers to a family of unsaturated fatty acids, and "ALA" stands for "a-linolenic acid," part of the "Omega 3" family.  ALA is a nutrient that is essential in the human diet in the sense that absence of the nutrient will result in symptoms of nutrient deficiency disease.  72 Fed. Reg. 66103, 66105 n.3 (Nov. 27, 2007).  (*See* RJN, Ex H.)  Thus, oils that provide an "Excellent Source of Omega 3 ALA" are, by definition, "nutritious."  The statement on the label is true on its face.

The Court does not have to affirmatively decide that "Omega 3 ALA" *is* "nutritious" or that the comparisons to butter or statements about cholesterol being "zero" are true in order to rule on this motion.  From the Complaint and product labels alone, the Court can see that the statement about "nutritious oils" refers specifically to plant oils like "soybean and canola" and to "Omega 3 ALA," and can observe—by its omission—that Rosen never alleges that "Omega 3 ALA" is *not* a "nutritious" substance or that the TFAs in Unilever's brands exceed the "half gram" threshold.  These statements are true, as even Plaintiffs do not allege them to be false except insofar as their claim that Unilever fails to list the exact level of trace TFAs where the total is less than .5 grams per serving.  But that is the very circumstance where the FDA mandates that the disclosure "shall" be "zero" grams.

Furthermore, ICBINB! is a healthy alternative to butter.  In fact, as the label clearly indicates, it contains "70% Less Saturated Fat than Butter."  (RJN, Ex. A.)  In addition, it has other healthy attributes, as discussed above.

The burden is on Plaintiff to allege wrongful conduct.  Here, the Complaint alleges either lawful conduct or perfectly truthful statements.  It should dismiss Rosen's claims because the statements he attacks are truthful.

**E.     Plaintiff's Affirmative Misrepresentation Claims Refer to Non-Actionable Puffery.**

The label statement about "nutritious oils" and the statements and advertisements comparing ICBINB! to butter (Compl. ¶¶ 14-19), in this context, are also non-actionable puffery.

"Puffery" is "sales talk," statements that no one could reasonably rely upon or mistake for claims of fact. *Cook, Perkins & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990). Puffery separates "general assertions of superiority" from "factual misrepresentations" that are concrete and specific. *Id*. The term "nutritious" (and similar adjectives) has been repeatedly held to be non-actionable puffery. The following are similar product statements and adjectives that courts have held to be puffery:

- "[J]ust one of a variety of ***nutritious*** Gerber Graduates foods and juices that have been specifically designed to help toddlers grow up strong and healthy." *Williams*, 552 F.3d at 939 & n.3 (emphasis added).

- "***[O]ptimum nutrition***." *Tylka v. Gerber Prods. Co.*, No. 96 C 1647, 1999 WL 495126, at *2-3 (N.D. Ill. July 1, 1999) (emphasis added).

- "***Nutritionally***, you can't buy a better baby food than Gerber." *Id*. (emphasis added).

- "[M]ost wholesome ***nutritious safe food[ ]*** you can buy anywhere in the world." *Id*.; *High Rd. Holdings, LLC v. Ritchie Bros. Auctioneers (Am.), Inc.*, No. 1:07-cv-4590, 2008 WL 450470, at *4 (N.D. Ill. Feb. 15, 2008) (citation omitted) (emphasis added).

- "Modified food starch and sugar are FDA approved ingredients. The use of these ingredients in select baby food items provides *better product taste and texture **without sacrificing nutrition***!" *Tylka*, 1999 WL 495126, at *2-3 (emphasis added).

- "McDonalds can be part of ***any balanced diet and lifestyle***." *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 527-29 (S.D.N.Y. 2003) (emphasis added).

- "McChicken ***Everyday***!" *Id*. (emphasis added).[9]

---

[9] In a "TFA" class action case against KFC Corporation, the district court in San Diego determined that the following claims were puffery: fast food "provides the 'best food,'" it "can fit into a balanced eating plan," "[y]ou can enjoy 'fast food' as part of a sensible balanced diet," and "[w]e still take pride in doing things the Colonel's way, utilizing only the highest quality ingredients, innovative recipes, and time-tested cooking methods." *Fraker*, 2007 WL 1296571, at *3.

Rosen's attack on Unilever's comparison to butter is also non-actionable. (*Cf.* Compl. ¶¶ 15-18.) According to the FDA, this is considered a "relative" claim. It is a perfectly permissible comparison between similar products. 21 C.F.R. § 101.13(j) ("A food may bear a statement that compares the level of a nutrient in the food with the level of a nutrient in a reference food. These statements shall be known as 'relative claims' and include 'light,' 'reduced,' 'less' (or 'fewer'), and 'more' claims.").

Rosen's allegations of affirmative misrepresentations refer to non-actionable puffery.

**F.    Plaintiff Has Not Pled His Claims with the Requisite Particularity.**

In *Kearns v. Ford Motor Co*., 567 F.3d 1120 (9th Cir. 2009), the Ninth Circuit held that claims brought under the "fraudulent" prong of the UCL and claims sounding in fraud under the UCL and CLRA must be pled with particularity under Rule 9(b). *Id.* at 1125. This applies also to omissions. *Id.* at 1126. Thus, a claimant who sues over advertising must "articulate the who, what, when, where, and how of the misconduct alleged." *Id.* Moreover, a complaint must meet the minimum standards of Rule 12(b)(6) by going beyond just a recitation of elements and legal conclusions. *See Twombly*, 550 U.S. at 555.

Rosen has not come close. He has not stated the "who, what, when, where, and how of the misconduct alleged"—which advertisements, which product label, and in what way he relied.

Rosen alleges he would not have purchased ICBINB! if he had known that the product was unhealthy, but he does not state which advertisements he relied on. *Cf. Lyons v. Coxcomb Inc.*, No. 08-CV-02047-H (CAB), 2009 WL 347285, at *11 (S.D. Cal. Feb. 6, 2009) (dismissing CLRA claim where plaintiff did not allege reliance on any particular advertisement). He claims he relied on the product label stating "Made With A Blend of Nutritious Oils."  But he makes no such claim about the advertising. All he does is recite the advertising campaign (Compl. ¶ 19), and does not allege that he relied on, let alone read, heard, or even saw, the advertisements. Instead, he serves up a porridge of polemics and launches into a diatribe about why eating partially hydrogenated oils is bad. None of this describes what Rosen read, saw, heard, or relied on.

These bare allegations are indistinguishable from those in *Wright v. General Mills, Inc.*, No. 08cv1532 L(NLS), 2009 WL 3247148 (S.D. Cal. Sept. 30, 2009) (Lorenz, J.), another "Private Surgeon General" case in which the district court in San Diego found that plaintiff failed to meet the *Twombly* and *Iqbal* pleading standards. There, the plaintiff sued General Mills for advertising "Nature Valley" products as "100% Natural" even though the products contained high-fructose corn syrup. But like Plaintiffs here, all the plaintiff in *Wright* alleged was that "[a]s a direct result of its misleading, deceptive, untrue advertising . . . Defendant caused Plaintiff and other members of the Class to purchase, purchase more of, or pay more for, these Nature Valley products." 2009 WL 3247148, at *5 (citation omitted). The *Wright* court said that was not enough: "Factual allegations must provide more than 'labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do' in order to 'raise a right to relief above the speculative level.'" *Id.*, at *4 (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65).

Rosen's omission claim is just as bad. To be actionable, a fraudulent omission must be either "contrary to a representation actually made by the defendant," or an omission of fact that the defendant had a duty to disclose. *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006); *Long v. Hewlett-Packard Co.*, No. C 06-02816 JW, 2007 WL 2994812, at *8 (N.D. Cal. July 27, 2007) (Ware, J.) (where manufacturer made no affirmative representation, no duty to disclose). Under California law, a duty to disclose only arises in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; or (4) when the defendant makes partial representations but suppresses some material fact. *Alfaro v. Cmty. Hous. Improvement Sys. & Planning Ass'n*, 171 Cal. App. 4th 1356, 1382 (2009); *see also Bourgi v. West Covina Motors, Inc.*, 166 Cal. App. 4th 1649, 1662 (2008) (absent a duty to disclose, there is no breach by omission of the CLRA). Rosen has alleged none of these.

Duty to disclose must be pled with particularity. *Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1104 (N.D. Cal. 2007). But Rosen has pled no statement by Unilever from which an affirmative duty to disclose could arise. *Cf. Animal Legal Def. Fund v. Mendes*, 160 Cal.

1   App. 4th 136, 145-48 (2008) (in the absence of affirmative statements, no UCL claim could be

2   stated on the theory that milk-purchasing consumers were being deprived of the "benefit of the

3   bargain").[10]

4        The Court should dismiss for failure to plead with the requisite particularity.

5        **G.    Plaintiff Is Not Entitled to Injunctive Relief.**

6        Before Plaintiff filed his Complaint, Unilever already began reformulating ICBINB! to

7   reduce the already low levels of TFAs.[11]  Rosen has failed to plead facts showing why injunctive

8   relief is necessary.

9        This case is factually indistinguishable from *Wright v. General Mills.*  There, the district

10  court dismissed the plaintiff's claims for injunctive relief attacking General Mills' "Nature

11  Valley" products where it was "undisputed that at the time plaintiff filed her complaint defen-

12  dant's products no longer contained [high-fructose corn syrup]."  2009 WL 3247148, at *5.  Here,

13  as in *Wright*, Unilever announced it was phasing out TFAs in its ICBINB! product and changing

14  the product label accordingly.  (*See* RJN, Exs. B, C.)   This plan was in action before Rosen filed

15  suit.

16       In *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 660-61 (1993), a class action was

17  brought alleging that the defendant misled customers into thinking its Citrus Hill® orange juice

18  product was freshly squeezed when in fact it was made from concentrate.  But the defendant had

19       [10] The product label Rosen challenges here is very different from the product label at issue
20  in the Ninth Circuit's opinion in *Williams*, 552 F.3d at 936-37.  The product in *Williams*, called
    "fruit juice snacks," bore pictures of fruits on the label even though the product contained no juice
21  from any of those kinds of fruit.  *Id*. at 936.  In short, the message conveyed by the pictures was
    directly contrary to the ingredient list, and so too was the label, which described the product as
22  being made with fruit juice and "other all natural ingredients," a claim that "appears to be false."
    *Id*. at 939.  No such comparable untruth is alleged to appear on the ICBINB! label.

23       [11] In a publicly issued press release, Defendant explained to its consumers that after years
24  of research and study, it was undertaking the challenge of converting its products away from
    partially hydrogenated oils.  (RJN, Ex. B.)  Defendant has already reformulated ICBINB!
25  Original to reduce the amount of trans fat and has removed the phrase "Made With A Blend of
    Nutritious Oils" from the product label.  (RJN, Ex. C.)  This Court may properly consider the
26  press release and Defendant's new product label because the issue has been incorporated into the
    Complaint.  *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1988) (If the complaint
27  incorporates by reference extrinsic facts or exhibits, the court may examine these materials so
    long as no party questions their authenticity.); *Knievel*, 393 F.3d at 1076 (same).

28

1    already changed the product label.  The trial court dismissed, and the appellate court affirmed.

2    *See Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997, 1022 (2005) (no UCL

3    injunction allowed where the offending conduct was the subject of a consent judgment).

4           Rosen has failed to plead facts showing the conduct is likely to recur, as required by *Iqbal*.

5           **H.      The Court Should Strike Plaintiff's CLRA Damage Claim.**

6           The CLRA requires that written notice be provided to the defendant at least thirty days

7    *prior to* commencement of an action seeking damages.  Cal. Civ. Code § 1782(a).  Plaintiff did

8    not send his "30-day letter" *before* commencing suit as the statute requires.  Rather, he admits

9    that he sued first and that he intends to send the notice later.  (Compl. ¶ 50.)

10          That is not good enough, as Judge Fogel recently observed.  In *Stearns v. Select Comfort*

11   *Retail Corp.*, Judge Fogel struck "without leave to amend" a CLRA damage claim hobbled by the

12   same late filing of the "30-day letter."  No. 08-2746 JF, 2009 WL 1635931, at *15 (N.D. Cal.

13   June 5, 2009) (Fogel, J.); *accord Davis v. Chase Bank U.S.A., N.A.*, No. CV 06-04804 DDP

14   (PJWx), 2009 WL 2868817, at *13 (C.D. Cal. Sept. 3, 2009) (the CLRA's "procedural

15   requirements are strictly adhered to," and the sanction for non-compliance is "dismissing a claim

16   with prejudice"); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 950 (S.D. Cal. 2007);

17   *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1195-96 (S.D. Cal. 2005); *Von Grabe v.*

18   *Sprint PCS*, 312 F. Supp. 2d 1285, 1304 (S.D. Cal. 2003).

19          The Court should strike the CLRA damage claim without leave to amend.

20   **VI.    CONCLUSION**

21          The Court should dismiss the Complaint with prejudice.  In the alternative, it should

22   dismiss the CLRA damage claim and require Rosen to plead his claims with particularity.

23   Dated: November 30, 2009              WILLIAM L. STERN
                                           JANELLE J. SAHOURIA
24                                         MORRISON & FOERSTER LLP

25                                         By: /s/ William L. Stern
                                               William L. Stern
26

27                                         Attorneys for Defendant
                                           UNILEVER UNITED STATES, INC.
28