1   MICHAEL R. REESE (CA SBN 206773)
    mreese@reeserichman.com
2   KIM E. RICHMAN
    krichman@reeserichman.com
3   BELINDA L. WILLIAMS
    bwilliams@reeserichman.com
4   **REESE RICHMAN LLP**
    875 Avenue of the Americas, 18th Floor
5   New York, New York, 10001
    Telephone:  (212) 643-0500
6   Facsimile:   (212) 253-4272

7   *Attorneys for Plaintiff AMNON ROSEN, on behalf of himself*
    *and all others similarly situated*

8

9

10

11

12

13                    UNITED STATES DISTRICT COURT

14        NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

15

16   AMNON ROSEN, on behalf of himself and all        Case No.    C-09-02563 JW
     others similarly situated,
17                                                    **PLAINTIFF'S OPPOSITION TO**
                          Plaintiff,                  **DEFENDANT'S MOTION TO**
18                                                    **DISMISS**
             v.
19
     UNILEVER UNITED STATES, INC.,
20
                          Defendant.
21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO DISMISS
Case No.  C-09-02563 JW

1

# TABLE OF CONTENTS

2   I.      INTRODUCTION.........................................................................................................1

3   II.     STATEMENT OF ISSUES TO BE DECIDED................................................3

4   III.    STATEMENT OF FACTS.................................................................................3

5   IV.     THE APPLICABLE LEGAL STANDARD.........................................................4

6   V.      ARGUMENT ................................................................................................5

7           A.      PLAINTIFF'S CLAIMS ARE NOT PREEMPTED................................5

8                   1.      Defendant Has Not Overcome the Strong Presumption

9                           Against Preemption……………………………………………..........5

10                  2.      The Commerce Clause Does Not Apply to

11                          Plaintiff's Consumer Claims……………………………………........11

12          B.      THIS COURT SHOULD NOT ABSTAIN …………………………….......12

13          C.      CEL-TECH'S SAFE HARBOR IS INAPPLICABLE.........................................13

14          D.      DEFENDANT'S STATEMENTS ARE MISLEADING....................................14

15          E.      PLAINTIFF'S CLAIMS ARE NOT PREMISED ON   PUFFERY....................16

16          F.      EACH OF PLAINTIFFS' CLAIMS ARE SUFFICIENTLY PLED…...................17

17          G.      PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF......................................20

            H.      DEFENDANT'S ARGUMENT REGARDING A CLRA DAMAGES
18                  CLAIM IS FRIVOLOUS BECAUSE NO SUCH CLRA CLAIM FOR
19                  DAMAGES IS STATED IN THE COMPLAINT ............................................. 21

20  VI.     CONCLUSION..............................................................................................22

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

*Alfaro v. Cmty. Hous. Improvement Sys. & Planning Ass'n,*

    171 Cal. App. 4th 1356 (2009)........................................................................20

*Altria Group, Inc. v. Good,*

    129 S. Ct. 538 (2008).......................................................................2,3,5,8,11

*Ashcroft v. Iqbal,*

    129 S.Ct. 1937 (2009).....................................................................................4

*Cel-Tech Commc'ns, Inc. v. Los Angeles Tel. Co.,*

    20 Cal. 4th 163 (1999)..................................................................................13

*Cipollone v. Liggett Group, Inc.,*

    505 U.S. 504 (1992)........................................................................................8

*City of Philadelphia v. New Jersey,*

    437 U.S. 617, 98 S.Ct. 2531 (1978)............................................................11

*Cook, Perliss, & Liehe, Inc. v. N. Cal. Collection Service,*

    911 F.2d 242 (9th Cir. 1990).......................................................................16

*Cooper v. Pickett,*

    137 F.3d 616 (9th Cir. 1997).......................................................................19

*Committee on Children's Television v. General Foods Corp.,*

    35 Cal. 3d 197 (1983)..................................................................................14

*Embry v. ACER America Corp.,*

    09-cv-1808 JW (N.D. Cal. July 15, 2009)................................................19,20

*In re: Epogen & Aranesp Off-Label Marketing & Sales Practices Litig.,*

    590 F.Supp.2d 1282 (C.D.Cal. 2008) .........................................................10

*Faigman v. AT&T Mobility LLC*, No. 06-cv-04622,

    2007 U.S. Dist. LEXIS 52192 (N.D. Cal. July 18, 2007)............................17

*In re Farm Raised Salmon Cases,*

    42 Cal.4th 1077, 175 P.3d 1170 (2008)......................................................5,12

1  *Fraker v. KFC Corp.*, No. 06 CV 01284,

2       2007 U.S.Dist. LEXIS 32041 (S.D.Cal. Apr. 27, 2007)........................................................9

3  *Hitt v. Arizona Beverage Co.*, No. 08 CV 809,

4        2009 U.S.Dist. LEXIS 16871 (S.D.Cal. Feb.4, 2009)................................................10,12

5  *Holk v. Snapple Beverage Corp.*,

6       575 F.3d 329 (3d Cir. 2009)...........................................................................................5

7  *Intrieri v. Superior Court*,

8       117 Cal. App. 4th 72 (2004)........................................................................................20

9  *Jackson v. Balanced Health Prods., Inc.*, No. C 08-05584,

10       2009 U.S.Dist. LEXIS 48848 (N.D.Cal. Jun. 10, 2009)...............................................9,12

11  *Kasky v. Nike, Inc.*,

12       27 Cal. 4th 939 (2002)..............................................................................................15

13  *Kearns v. Ford Motor Co.*,

14       567 F.3d 1120 (9th Cir. 2009)....................................................................................18

15  *Levine v. Diamanthuset, Inc.*,

16       950 F.2d 1478 (9th Cir. 1991)......................................................................................4

17  *LiMandri v. Judkins*,

18       52 Cal. App. 4th 326 (1997)........................................................................................20

19  *Lockwood v. Conagra Foods, Inc.*,

20       597 F.Supp.2d 1028 (N.D.Cal. 2009) ...................................................................10,12,13

21  *McKell v. Washington Mut., Inc.*,

22       142 Cal.App.4th 1457 (2006)......................................................................................13

23  *Medtronic, Inc. v. Lohr*,

24       518 U.S. 470 (1996)....................................................................................................5

25  *Mohamed v. Jeppesen Dataplan, Inc.*,

26       579 F.3d 943 (9th Cir. 2009)........................................................................................4

27  *Morgan v. AT&T Wireless Services, Inc.*,

28       177 Cal. App. 4th 1235 (2009).....................................................................................14

*Moore v. Kayport Package Express,*

    885 F.2d 531 (9th Cir. 1989)........................................................................................19

*Murphy v. DirecTV, Inc.*, case no. 07-cv-6465

    (C.D. Cal. May 9, 2008)(Cooper J.).....................................................................19

*Newcal Indus. v. Ikon Office Solutions,*

    513 F.3d 1038 (9th Cir. 2008)................................................................................16

*Nordberg v. Trilegiant Corp.*,

    445 F. Supp. 2d 1082 (N.D. Cal. 2006)...........................................................17

*In re Paxil Litig.*,

    218 F.R.D. 242 (C.D.Cal. 2003)...........................................................................12

*Pelman v. McDonald's Corp.*,

    237 F. Supp. 512 (S.D.N.Y. 2003)..................................................................16,17

*Pelman v. McDonald's Corp.*,

    396 F.3d 508 (2d Cir. 2005)...................................................................................17

*Pike v. Bruce Church, Inc.*,

    397 U.S. 137, 90 S.Ct. 844 (1970)......................................................................11

*Plumley v. Massachusetts,*

    155 U.S. 461 (1894)....................................................................................................5

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*,

    642 F.Supp.2d 1112 (C.D.Cal. 2009).............................................................9,10

*Rice v. Santa Fe Elevator Corp.,*

    331 U.S. 218 (1947)....................................................................................................8

*Shin v. v. BMW of N. Am.*, 09-cv-398 AHM,

    2009 U.S. Dist. LEXIS 67994 (C.D. Cal. July 16, 2009)..........................18

*Siracusano v. Matrixx Initiatives, Inc.*,

    585 F.3d 1167 (9th Cir. 2009)..................................................................................4

*In re Tobacco II Cases,*

    46 Cal. 4th 298 (2009)..............................................................................................14

*United States v. Ninety-Five Barrels More or Less of Alleged Apple Cider Vinegar*,

    265 U.S. 438 (1924)...................................................................................................11,16

*United States v. Redwood City*,

    640 F.2d 963 (9th Cir. 1981)...........................................................................................4

*Vess v. Ciba-Geigy Corp. USA*,

    317 F.3d 1097 (9th Cir. 2003)........................................................................................18

*Williams v. Gerber Prods. Co.*,

    552 F.3d 934 (9th Cir. 2008)...................................................................................3,14,16

*Wright v. General Mills, Inc.*, 08 CV 1532,

    2009 U.S.Dist. LEXIS 90576 (S.D.Cal. Sept. 30, 2009).............................................12,20

*Wyeth v. Levine*,

    129 S. Ct. 1187 (2009)................................................................................................2,3,5

*Yeksigian v. Nappi*,

    900 F.2d 101 (7th Cir. 1990)........................................................................................4,5

**<u>Other</u>**

Fed. R. Civ. P. 9.........................................................................................................19

Fed. R. Civ. P. 15........................................................................................................5

21 U.S.C. § 343-1.......................................................................................................12

21 C.F.R. § 101.9 (c)(2)(ii)...........................................................................................6

1    Plaintiff Amnon Rosen ("Plaintiff") respectfully submits the following in opposition to

2   the motion to dismiss ("Motion" or "Def. Mtn") filed by defendant Unilever United States, Inc.

3   ("Defendant" or "Unilever").   Defendant's Motion is without merit and must be denied in its

4   entirety.

5   **I.      INTRODUCTION**

6        Defendant manufactures "I Can't Believe It's Not Butter!" ("Product" or "ICBINB!") – a

7   popular "soft spread" food marketed as a substitute for butter.  In order to increase the sales of its

8   Product so that it could make more money, Defendant marketed its Product as being "Made With

9   a Blend of Nutritious Oils" and, therefore, superior to similar food products.  Defendant made this

10  representation both on the packaging itself, as well as in a multi-million dollar advertising blitz

11  that included both television and print advertising.

12       Plaintiff Rosen relied upon this representation that ICBINB! was ***made with a blend of***

13  ***nutritious oils*** in deciding to purchase and ingest the Product.  Unfortunately for Mr. Rosen and

14  other consumers, these representations regarding the quality of the oils – *i.e.* that they are

15  nutritious – are false and misleading.  Instead, the oils are not nutritious, but rather contain highly

16  unhealthy partially hydrogenated oil – an artificial, man-made substance that has no nutritional

17  value and is known to cause a number of health problems, including coronary disease, heart

18  attacks and death.  As stated by the Harvard School of Medicine:

19

20       [I]ntake of partially hydrogenated vegetable oils contributed to the risk of
         having a heart attack…It lowers levels of high density lipoprotein (HDL)
21       particles, which scour blood vessels for bad cholesterol and truck it to the
         liver for disposal.  It also promotes inflammation, an overactivity of the
22       immune system that has been implicated in heart disease, stroke, diabetes,
         and other chronic conditions…This multiple-pronged attack on blood
23       vessels translates into heart disease and death.

24  *See* Class Action Complaint, ¶ 10 citing *http://www.hsph.harvard.edu/nutritionsource/nutrition-*

25  *news/transfats/*.

26

27

28

OPPOSITION TO MOTION TO DISMISS
Case No.  C-09-02563 JW                                                                                    1

1        Despite these disturbing facts, Defendant seeks to avoid liability for its misconduct by

2   filing a motion to dismiss.  Review of Defendant's Motion reveals, however, that it is completely

3   without merit and must be denied.

4        First, Defendant's argument that Plaintiff's claims are preempted completely ignores

5   several recent United States Supreme Court cases that hold that such claims are not preempted.

6   *See*, *e.g.*, *Wyeth v. Levine*, 129 S. Ct. 1187 (2009); *Altria Group, Inc. v. Good*, 129 S. Ct. 538

7   (2008).

8        Second, in its erroneous preemption argument, Defendant mischaracterizes Plaintiff's

9   claims as attacking Defendant's representation that its Product contains "O g Trans Fat per

10  serving."  Def. Mem. at 5.  This is a complete untruth.  No claim is premised on Defendant's

11  representation that the product contains "O g Trans Fat per serving" – in fact, no where does the

12  Complaint even mention that phrase.  Accordingly, Defendant's argument is completely specious

13  and must be denied.

14       Defendant's alternative argument for abstention in deference to the Food and Drug

15  Administration ("FDA") likewise fails.  Again, Defendant mischaracterizes Plaintiff's claims as

16  premised on Defendant's representation that the Product contains "O g Trans Fat per serving."

17  As seen above, this is utterly false.  Defendant also mischaracterizes the claims as solely for

18  equitable relief that seeks an injunction.  This is also untrue.  The claims seeks monetary relief as

19  well.  Furthermore, even if Defendant were correct in its characterization of the claims,

20  numerous courts have held in similar situations that abstention is not proper.  This Court should

21  likewise deny Defendant's Motion.

22       Defendant's remaining arguments – that its representations are not misleading, but rather

23  true; alternatively, the claims are nothing more than meaningless puffery; and, that the

24  Complaint does not adequately plead the claims under Rule 9(b) – all fail in light of the well-

25  pled detail in the Complaint.

26       Accordingly, Defendant's Motion to dismiss should be denied in its entirety.

27

28

**II.     STATEMENT OF ISSUES TO BE DECIDED**

1.     Whether Defendant has failed to carry its heavy burden on its preemption, Commerce Clause and equitable abstention arguments, given the recent authority by the United States Supreme Court in *Wyeth v. Levine*, 129 S.Ct. 1187 (2009) and *Altria Group, Inc. v. Good*, 129 S.Ct. 538, 543 (2008), as well as several federal appellate and district courts, underscoring the strong "presumption against preemption"?

**2.**     Whether the claims have been adequately pled, given that they meet both the pleading standards under Federal Civil Procedure Rule 8(a) and 9(b), as well as the Ninth Circuit most recent decision in *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) regarding deceptive food claims?

3.     Whether the Complaint adequately states a claim for injunctive relief given that, almost two months after the filing of the Complaint, Defendant issued a press release promising to: (1) remove the misleading representations and (2) on a date yet to be determined, but that has not yet occurred, to remove the toxic partially hydrogenated oil from its Product?

**III.     STATEMENT OF FACTS**

Defendant manufactures "I Can't Believe It's Not Butter!," a soft-spread food that Defendant markets as a substitute for butter.  ¶ 12.[1]   In order to distinguish its Product from butter and other soft-spreads, Defendant has represented to consumers that it is "Made With a Blend of Nutritious Oils," thereby rendering its superior to its competitors' products. ¶¶ 2, 14. Defendant conveyed this message to consumers through representations in bold-face on the packaging that the Product was "Made With a Blend of Nutritious Oils" as well as through a multi-million dollar advertising blitz comprised of television and print advertisements.  ¶¶ 3, 13-19.

Relying upon the representations that Defendant's Product was superior to similar products in that it was "Made With a Blend of Nutritious Oils," Plaintiff Amnon Rosen purchased

---

[1] All "¶__" are references to paragraphs in the Class Action Complaint filed on June 9, 2009 (Dkt. 1).

OPPOSITION TO MOTION TO DISMISS
Case No.  C-09-02563 JW

3

1     "I Can't Believe It's Not Butter" approximately once a month from June 2007 to April 2009 from

2     various grocery stores – *i.e.* Safeway, Lucky Supermarket and Albertsons – located in the

3     Sunnyvale, California area.  ¶8.

4          Unfortunately, for Mr. Rosen and the proposed class, Defendant's representations are

5     false and misleading.  Specifically, "I Can't Believe It's Not Butter!" *is not* made with a blend of

6     nutritious oils, nor is it superior to butter or similar products.  Rather, "I Can't Believe It's Not

7     Butter!" contains highly unhealthy, non-nutritious partially hydrogenated oil.  ¶ 4.  Partially

8     hydrogenated oil is an artificial, man-made substance that has no nutritional value and is known

9     to cause a number of health problems, including coronary disease, heart attacks and death.  ¶ 5.

10    In fact, the health problems associated with partially hydrogenated oil are so widespread and

11    debilitating that doctors have compared the oil to poison and have advised consumers to avoid

12    any consumption of partially hydrogenated oil.  ¶¶ 5, 10.

13    **IV.**     **THE APPLICABLE LEGAL STANDARD**

14          Under Rule 12(b)(6), dismissal is proper only in "extraordinary" cases.  *United States v.*

15    *Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).  On a motion to dismiss, the court must "accept

16    the plaintiff's allegations as true and construe them in the light most favorable to the plaintiffs."

17    *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1177 (9th Cir. 2009).  In *Ashcroft v. Iqbal*,

18    129 S.Ct. 1937 (2009), the United States Supreme Court emphasized that construction of the

19    pleading in the plaintiff's favor is applicable to facts -- as opposed to legal conclusions.  As the

20    Supreme Court directed, "[w]hen there are well-pleaded allegations, a court should assume their

21    veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* at

22    1950; *see also Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009) (court

23    must draw "all reasonable inferences from the complaint in [the plaintiff's] favor").  Extraneous

24    material may not be used in assessing the legal adequacy of the complaint.  *See Levine v.*

25    *Diamanthuset, Inc.*, 950 F.2d 1478, 1482 (9th Cir. 1991).  Furthermore, "defendants have the

26    burden on a motion to dismiss to establish the legal insufficiency of the complaint." *Yeksigian v.*

27

28

OPPOSITION TO MOTION TO DISMISS
Case No.  C-09-02563 JW                                         4

*Nappi*, 900 F.2d 101, 104 (7th Cir. 1990). As demonstrated fully below, Defendant has not met its burden. Accordingly, Defendant's instant Motion should be denied in its entirety.[2]

## V.    ARGUMENT

### A.    PLAINTIFF'S CLAIMS ARE NOT PREEMPTED

#### 1. Defendant Has Not Overcome the Strong Presumption Against Preemption

In *Wyeth v. Levine*, 129 S.Ct. 1187 (2009), the United States Supreme Court identified the cornerstone of its preemption jurisprudence:

> [I]n all pre-emption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.

*Id.* at 1194-95 (internal citations omitted); *see also Altria Group, Inc. v. Good*, 129 S.Ct. 538, 543 (2008) (presumption against preemption "applies with particular force when Congress has legislated in a field traditionally occupied by the States"); *Farm Raised Salmon Cases*, 42 Cal.4th 1077, 1087-88, 175 P.3d 1170, 1176 (2008) (interpretation of the Federal Food, Drug, and Cosmetic Act is "informed by a strong presumption against preemption").

The presumption against preemption exists because "respect for the States as 'independent sovereigns in our federal system' leads to the assumption that 'Congress does not cavalierly pre-empt state-law causes of action.'" *Wyeth*, 129 S.Ct. at 1195 n.3 (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). This is particularly true of the regulation of food and beverage labeling and branding. *See Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334 (3d Cir. 2009) (quoting *Plumley v. Massachusetts*, 155 U.S. 461, 472 (1894) ("If there is any subject over which it would seem the states ought to have plenary control … it is the protection of the people against fraud and deception in the sale of food products.")). Accordingly, this Court must assume that in the current case, the laws of California are not preempted by federal law.

---

[2] In the event the Court decides to grant Defendant's instant Rule 12(b)(6) Motion, Plaintiff respectfully requests leave to amend his Complaint. *See* Fed. R. Civ. P. 15(a)(2) (leave to amend should be freely granted).

Despite this recent Supreme Court authority regarding the strong presumption against preemption, Defendant argues that the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 ("FFDCA") expressly preempts all of Plaintiff's claims.   Def. Mem. at 3-7.   Specifically, Defendant argues that because two U.S. Food and Drug Administration ("FDA") regulations, 21 C.F.R. § 101.9 (c)(2)(ii) and 21 C.F.R. § 101.13(i)(3), "regulate TFA disclosures…[c]laims under both FDA regulations are subject to preemption under 21 U.S.C. § 343-1(a)(4) and (5)." Def. Mem. at 5-6.[3]   According to Defendant, Plaintiff's claims seek a remedy that directly contravenes the Nutrition Labeling and Education Act of 1990 ("NLEA")'s provision that "no state may 'directly or indirectly establish … any requirement for the labeling of food that is not identical to the requirement of section 403(q) [21 U.S.C. § 343(q)].'" *Id.* at 4.   Defendant asserts, "'[n]ot identical to' is Rosen's undoing" because "a state may impose labeling requirements *only if* the state requirements are 'identical to' the FDA's."   *Id.* at 4-5 (emphasis in original).   Defendant could not be more wrong.

_____

[3] Under 21 C.F.R. § 101.9 (c)(2)(ii), which specifically governs statements of TFA levels in the "Nutrition Facts" box, a manufacturer is not required to state TFA levels for products that "contain less than 0.5 gram of total fat in a serving if no claims are made about fat, fatty acid or cholesterol content … If the serving contains less than 0.5 gram, the content, when declared, shall be expressed as zero." 21 C.F.R. § 101.9 (c)(2)(ii).  21 C.F.R. § 101.13(i)(3), which regulates nutritional statements made outside the "Nutrition Facts" box, states "the label or labeling of a product may contain a statement about the amount or percentage of a nutrient if … [t]he statement does not in any way implicitly characterize the level of the nutrient in the food and it *is not false and misleading in any respect*." (emphasis added).  In any event, Plaintiff does not challenge the adequacy of Defendant's TFA disclosures set forth in the "Nutrition Facts" box or outside the box on the label of ICBINB!.  Indeed, Defendant conflates the issues by focusing on its statements in the "Nutrition Facts" Box , "0 g Trans Fat"  and  outside the box,"0 g Trans Fat per serving," on its ICBINB! label.  *See* Def.'s Mem. at 4-6.  As shown below, Plaintiff's claims are not at all based on what Defendant has or has not set forth in the "Nutrition Facts" box or outside the box on its ICBINB! label concerning TFA levels in ICBINB!.  Rather, Plaintiff's claims are based on Defendant's misleading and deceptive statements contained on the packaging of ICBINB! that the Product was "Made with a Blend of Nutritious Oils" and statements made in Defendant's widespread advertising and marketing campaign which represented ICBINB! to be nutritious and healthy.

The fatal flaw in Defendant's preemption argument is that it is based on a complete mischaracterization of Plaintiff's claims.  Contrary to Defendant's assertions, Plaintiff does not seek any state regulation whatsoever of Defendant's TFA disclosures on the labeling of ICBINB! – a point that, curiously, Defendant even acknowledges.  *See* Def.'s Mem. at 5 ("Plaintiff do [*sic*] not allege that the products contain TFAs in amounts that ***exceed*** the FDA's 'half a gram' threshold, nor do they [*sic*] allege that the labels violate the FDA labeling rules.") (emphasis in original)).  Nor does Plaintiff in any way challenge the adequacy of Defendant's TFA disclosures contained in or outside the "Nutrition Facts" box on the ICBINB! label.  Rather, under the California consumer protection laws, Plaintiff seeks to enjoin Defendant's false and misleading advertising of the nutritional attributes of ICBINB! through the misrepresentations Defendant makes in its advertising and marketing of the Product regarding its blend of nutritious oils.

To be sure, the gravamen of Plaintiff's Complaint is not that Defendant's disclosures of TFA levels on its ICBINB! label are inadequate, but rather, that Defendant made false and misleading claims on its ICBINB! packaging that ICBINB! is "Made With A Blend of Nutritious Oils" and deceptively conveyed to consumers in its multi-million dollar, widespread marketing campaigns that ICBINB! is nutritious and healthy. ¶¶ 2-4, 14-20.  As the factual predicate for his consumer protection claims, Plaintiff alleges:

> Mr. Rosen purchased "I Can't Believe It's Not Butter!" approximately once a month during the period June 2007 to April 2009 … Plaintiff Rosen relied on the misleading and deceptive statements contained on the packaging of "I Can't Believe It's Not Butter!" that it was **"Made with a Blend of Nutritious Oils"** as well as Defendant's widespread advertising and marketing of "I Can't Believe It's Not Butter!" that represented that the Product is nutritious and healthy. Based upon these misrepresentations, Mr. Rosen reached the  conclusion that "I Can't Believe It's Not Butter!" was in fact healthy and nutritious and relied upon these representations in making his decision to purchase "I Can't Believe It's Not Butter!".  As stated herein, ***Defendant's representations are misleading and deceptive because "I Can't Believe It's Not Butter!" is not nutritious or healthy as represented because it contains dangerous, unhealthy, non-nutritious partially hydrogenated oil***.  Plaintiff Rosen suffered injury in that he would not have paid money for the Product ***had these misrepresentations not been made***.

¶ 8 (emphasis in original and added).

The recent Supreme Court case of *Altria Group, Inc. v Good* is on point.  In *Altria* the Supreme Court held that claims for violation of Maine's Unfair Trade Practices Act (Maine's equivalent of the consumer protection claims asserted here) by light cigarette smokers who alleged that cigarette manufacturers' advertising fraudulently conveyed the message that "light" cigarettes deliver less tar and nicotine than regular brands were not preempted by the Federal Cigarette Labeling and Advertising Act (the "Labeling Act").  The Supreme Court reiterated that preemption analysis must begin "'with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress" and that this "assumption applies with particular force when Congress has legislated in a field traditionally occupied by the States." *Altria,* 129 S. Ct. at 543, quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947) (alteration in original).  In deciding against the preemption argument, the Court looked to "the legal duty that is the predicate of the common-law damages action" to determine whether the smokers' claims for violation of the MUTPA were preempted by the Labeling Act's express preemption provisions. *Id.* at 545*,* (quoting *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 524 (1992)).  The Supreme Court found that the legal duty that was the predicate of the smokers' consumer protection claims was the general duty not to deceive (not a duty to warn as mischaracterized by the defendant) and reasoned that state laws generally prohibiting deceptive practices were not preempted by the Labeling Act's express preemption of state law requirements and prohibitions specifically directed at cigarette advertising. *Altria,* 129 S. Ct. at 545-46.

Here, Plaintiff's claims are premised upon the general duty not to deceive.  Defendant violated this duty by making the misleading statement that its Product was "Made With a Blend of Nutritious Oils" and therefore superior to similar products. As recognized by the Supreme Court in *Altria*, these type of claims are not preempted.

Defendant's reliance on the decision in *Fraker v. KFC Corp.*, No. 06 CV 01284, 2007 U.S.Dist. LEXIS 32041, at *1 (S.D.Cal. Apr. 27, 2007) (Def. Mem. at 6), in support of its flawed express preemption argument is sorely misplaced both on the facts and on the law, especially in light of the recent decisions by the Supreme Court on preemption, including the *Altria* decision discussed above.  Specifically in *Fraker*, the plaintiff brought a consumer class action challenging statements made by KFC in its marketing and advertising that, *inter alia*, "it provides the best food, and … its food can be part of a healthy lifestyle," and that "You can enjoy fast food as part of a sensible balanced diet." *Id.* at *3-4 (internal quotations omitted).  Based on allegations that the products were high in trans fat, the plaintiff alleged that KFC's advertising statements violated state and federal statutes and regulations pertaining to food and drugs, including the FFDCA and California's Sherman Food, Drug and Cosmetic Law (the "Sherman Law").  *Id.* at * 5, 8.  The alleged violation of these statutes formed the basis for the plaintiff's UCL, FAL, CLRA and state common-law claims.  *Id.* at *4, 8.  Consequently, the court held that, "to the extent Plaintiff contends that alleged violations of the FDCA and Sherman law give rise to viable state law claims, such claims are impliedly preempted by the FDCA." *Id.* at *11.  Contrastingly, in the present case, as evinced by the face of the Complaint, Plaintiff has not brought any claims whatsoever under the FFDCA.  Nor has Plaintiff challenged the adequacy of Defendants' disclosure of TFA levels on its ICBINB! label.  Consequently, Plaintiff's UCL, FAL and CLRA claims are not preempted.

The following cases further inform the issue.  In *Jackson v. Balanced Health Prods., Inc.*, No. C 08-05584, 2009 U.S.Dist. LEXIS 48848, at *10 (N.D.Cal. Jun. 10, 2009), the plaintiff asserted state law claims under the UCL and FAL, *inter alia*, for false and misleading advertising and mislabeling under the Sherman Law.  *Id.* at *5, 12.  The plaintiff alleged that "the inclusion of Bumetanide in StarCaps render[ed] Defendants' advertising of the product as 'all natural' false and misleading." *Id.* at *12.  The court rejected the defendants' argument, in reliance on *Fraker*, that the FFDCA expressly preempted the plaintiff's claims, stating "*Fraker* is distinguishable because, in the present case, Plaintiffs have not brought claims directly under the FDCA." *Id.* at *10.  In *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F.Supp.2d 1112 (C.D.Cal.

2009), the plaintiff asserted false and misleading advertising claims under the Lanham Act and California's UCL and FAL. The court rejected the defendant's argument that the FFDCA expressly preempted the state law claims, opining:

> Neither [the FAL or UCL] is identical to the FFDCA or its regulations, although § 17200 may be used to enforce violations of California law that are identical to the FFDCA. For example, California's "Sherman Act" contains identical provisions to the FFDCA ….
>
> However, the Court finds that any limitation is not expressly preempted *in regards to claims based on false advertising or claims of unfair competition which are unrelated to the FDA regulations. Again, there is no preemption language under § 343-1 which addresses a false or misleading label, or for that matter, the breadth of issues indicated by an unfair competition law.* As long as Plaintiff's state claims do not impose different requirements than the FFDCA or FDA regulations, these claims are not preempted.

*Id.* at 1122 (emphasis added)[4]; *see also Lockwood v. Conagra Foods, Inc.*, 597 F.Supp.2d 1028, (N.D.Cal. 2009) (plaintiff's UCL claim for defendant's misleading advertising of pasta sauce containing high fructose corn syrup as all natural not expressly preempted by FFDCA); *Hitt v. Arizona Beverage Co.*, No. 08 CV 809, 2009 U.S.Dist. LEXIS 16871, at *2, 11-12 (S.D.Cal. Feb.4, 2009) (FAL, UCL and CLRA claims alleging deceptive labeling of drink products as 100% Natural, All Natural or Natural not preempted where defendants failed to "reference any express preemption provision that applies to Plaintiff's claims"). Thus, Defendant's assertion that "Rosen's TFA claims are indistinguishable from the TFA claims alleged in *Fraker*," Def. Mem. at 6, is false and Defendant's express preemption argument falls of its own weight. Plaintiff's claims are not preempted.

---

[4] The decision in *In re: Epogen & Aranesp Off-Label Marketing & Sales Practices Litig.*, 590 F.Supp.2d 1282 (C.D.Cal. 2008) is also on point. There, the court rejected the plaintiffs' "attempt to shoehorn allegations that Defendants have engaged in off-label promotion in violation of the FDCA into RICO and state consumer fraud causes of action," but held that "insofar as Plaintiffs can identify specific representations by Defendants that are literally false, misleading, or contain material omissions, the claims are actionable under RICO and California consumer fraud laws." 590 F.Supp.2d at 1290, 1292. As the court observed, "[t]he FDCA is not focused on the truth or falsity of advertising claims," as "the main purpose of the advertising restrictions set forth in the FDCA and its accompanying regulations is not to protect consumers from deceptive advertising …." *Id.* at 1290 (citations and internal quotation omitted).

1

## 2.  The Commerce Clause Does Not Apply to Plaintiff's Consumer Claims.

2       Defendant cobbles together the argument that "Plaintiff's claims violate the dormant

3   Commerce Clause."  Def. Mem. at 7.  Defendant's argument makes no sense.  First, as shown

4   above, Defendant miscasts the nature of Plaintiff's claims.   Plaintiff's claims challenge

5   Defendant's false and misleading statements made in its advertising and marketing of ICBINB!

6   that ICBINB! is "Made With A Blend of Nutritious Oils" and is nutritious and healthy -- in

7   violation of the UCL, FAL and CLRA.  Nowhere in the Complaint does Plaintiff challenge TFA

8   levels in ICBINB! or Defendant's disclosures thereof on the labeling of ICBINB!.  Nor does the

9   Complaint allege a single claim under the FFDCA.

10      Second, Defendant tortures the construction of *Pike v. Bruce Church, Inc.*, 397 U.S. 137,

11  90 S.Ct. 844 (1970) in an attempt to support its argument.  In that case, the United States

12  Supreme Court articulated the following balancing test:  "[w]here the statute regulates even-

13  handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are

14  only incidental, it will be upheld unless the burden imposed on such commerce is clearly

15  excessive in relation to the putative local benefits."  *Id.* at 142.  As the Supreme Court explained

16  in *City of Philadelphia v. New Jersey*, 437 U.S. 617, 623-24, 98 S.Ct. 2531 (1978), this test

17  recognizes that "incidental burdens on interstate commerce may be unavoidable when a State

18  legislates to safeguard the health and safety of its people."

19      Clearly, *Pike* has no relevance here.   Plaintiff is not looking to enforce any state

20  legislation regulating TFA levels in food products or disclosures of TFA levels on product

21  labeling.  Thus, Defendant's assertion that "[i]f successful, Rosen will Balkanize TFA labeling

22  rules – one set of rules for California that he prescribes and another prescribed by the FDA for

23  everyone else," *see* Def. Mem. at 7 (emphasis in original), is without merit.  Rather, Plaintiff

24  simply is looking for enforcement of the law that prohibits Defendant from making misleading

25  and deceptive statements.  *See*, *e.g.*, *Altria,* 129 S. Ct. at 545-46.  And as the Supreme Court has

26  held:  "It it not difficult to choose statements, designs, and devices which will not deceive."

27  *United States v. Ninety-Five Barrels More or Less of Alleged Apple Cider Vinegar*, 265 U.S. 438,

28  443 (1924).

## B.    THIS COURT SHOULD NOT ABSTAIN

In an argument cut from whole cloth, Defendant contends that this Court "should abstain." Def. Mem. at 8-9.  In reality, Defendant's "abstention" argument, referring to the FDA's "oversight" and "day-to-day supervision responsibilities," *(*Def. Mem. at 8), is a thinly-disguised plea for implied preemption under the doctrines of field and conflict preemption, which Defendant has not raised in support of its preemption argument.  *See* Def. Mem. at 3-7.  This is not surprising since courts have routinely rejected the view that states are impliedly preempted by extensive federal legislation and regulation in the area of food labeling.  *See, e.g., Lockwood*, 597 F.Supp.2d at 1031-34; *Hitt*, 2009 U.S.Dist. LEXIS 16871 at *12-16; *Jackson*, 2009 U.S.Dist.LEXIS 48848 at *10-12; *Farm Raised Salmon*, 175 P.3d at 1181-84; *Wright v. General Mills, Inc.*, 08 CV 1532, 2009 U.S.Dist. LEXIS 90576, at *5-8 (S.D.Cal. Sept. 30, 2009).

In conducting their preemption analyses, each of these courts recognized that the FFDCA, as amended by the NLEA, explicitly authorizes state regulation of food labeling.  On its face, the statute establishes a federal regulatory system to exist alongside state law.  *See* 21 U.S.C. § 343-1. Defendant's proposal to eviscerate the role of state law by requiring judicial abstention from deciding state law claims, on the sole basis of Defendant's inappropriate factual assertion that "the FDA is still investigating and evaluating whether, and how, it might further regulate label declaration of TFAs," *see* Def.'s  Mem. at 8, cannot be heard.  Under the plain language of FFDCA, this Court is not empowered to do so.[5]

Indeed, Defendant's conduct alleged in the Complaint, *i.e.*, its false and misleading advertising and marketing, misrepresenting that ICBINB! is "Made with a Blend of Nutritious

---

[5]  Defendant's self-servingly selective citation to *In re Paxil Litig.*, 218 F.R.D. 242 (C.D.Cal. 2003) defies credulity. In that case, the court denied class certification of UCL claims because the plaintiffs "propose[d] to proceed in a rather unusual manner; they intend[ed] to try their case only through the use of expert witnesses and scientific studies." *Id.* at 248. Based on this intent, not on any deference to the FDA as Defendant suggests, the court observed, "[i]n short, Plaintiffs would use the Court as a forum to challenge and to second-guess the FDA's prior approval of Paxil's safety and efficacy, with the significant claim that a jury must be the final arbiter of Paxil's safety." *Id.*  Acknowledging its "limited discretion to control how individual Plaintiffs choose to try their case," the court exercised that discretion to deny the class certification motion. *Id.*

1   Oils" and nutritious and healthy, is directly within the purview of the UCL, FAL and CLRA. As

2   Judge Breyer noted in *Lockwood*, in rejecting a similar argument that the UCL claims alleging

3   misleading advertising should be stayed in deference to the FDA, "every day courts decide

4   whether conduct is misleading." *Lockwood*, 597 F.Supp.2d at 1035. And as Judge Breyer further

5   noted, formal rulemaking by the FDA "would not dispose of plaintiffs' state law claims." *Id.*

6   That reasoning applies with equal force here. For all the above reasons, this Court should decline

7   to abstain or a stay this action in deference to the FDA.

8      **C.  <u>CEL-TECH'S SAFE HARBOR IS INAPPLICABLE</u>**

9      Defendant's argument that the safe harbor provided under the California Supreme Court's

10  decision in *Cel-Tech Commc'ns, Inc. v. Los Angeles Tel. Co.*, 20 Cal. 4th 163 (1999) applies here

11  to bar Plaintiff's UCL and FAL claims misses the mark and should be rejected. *See* Def. Mem. at

12  9.

13     In *Cel-Tech*, the court held that with respect to UCL claims based on allegations of unfair

14  business practices, a safe harbor applies to bar claims for acts ***expressly allowed by statute***,

15  explaining:

16     We thus conclude that a plaintiff may not bring an action under the unfair
       competition law if some other provision bars it. ***That other provision must***
17     ***actually bar it, however, and not merely fail to allow it. In other words, courts***
       ***may not use the unfair competition law to condemn actions the Legislature***
18     ***permits.*** Conversely, the Legislature's mere failure to prohibit an activity does
       not prevent a court from finding it unfair. Plaintiffs may not "plead around" a
19     "safe harbor," but the safety must be more than the absence of danger.

20

21  *Id.* at 184 (emphasis added); *see McKell v. Washington Mut., Inc.*, 142 Cal.App.4th 1457, 1474

22  (2006) ("Cel-Tech simply holds that a plaintiff may not bring an action under the UCL

23  challenging business practices specifically permitted by other statutes.").

24     Here, Defendant has cited to no statute, as indeed it cannot, that specifically permits

25  Defendant to make false and misleading statements that ICBINB! is "Made With A Nutritious

26  Blend of Oils" and is nutritious and healthy. To be sure, neither Congress nor the FDA has

27  promulgated any laws or regulations that specifically allow Defendant's false and misleading

28

OPPOSITION TO MOTION TO DISMISS
Case No. C-09-02563 JW
      13

1   statements.   Thus, try as it might,[6] Defendant cannot shelter its wrongful conduct in the

2   advertising and marketing of ICBINB! in the alleged safe harbor of FDA regulations that have no

3   relevance here.  As shown fully above, Plaintiff's UCL, FAL and CLRA claims do not challenge

4   the adequacy of Defendant's TFA disclosures contained in or outside the "Nutrition Facts" box

5   on the ICBINB! label.

6           **D.     DEFENDANT'S STATEMENTS ARE MISLEADING**

7           The Supreme Court of California recently underscored the importance of California's

8   consumer protection laws in "protecting the general public against unscrupulous business

9   practices."  *In re Tobacco II Cases,* 46 Cal. 4th 298, 312 (2009).  This is especially true in the

10  context of a class action brought against deceptive and misleading corporate conduct.  *Id.* at 313

11  ("consumer class actions and representative UCL actions serve important roles in the enforcement

12  of consumers' rights…These actions supplement the efforts of law enforcement and regulatory

13  agencies. This court has repeatedly recognized the importance of these private enforcement

14  efforts").

15          Because of these important goals forwarded by California's consumer protection statutes,

16  demurrers on consumer protection cases are highly disfavored.  *See*, *e.g.*, *Williams v. Gerber*

17  *Products, Co.*, 552 F.3d 934, 938 (9th Cir. 2008)(reversing dismissal by lower court and holding

18  that "whether a business practice is deceptive will usually be a question of fact not appropriate for

19  decision on a demurrer"); *Committee on Children's Television v. General Foods Corp.*, 35 Cal. 3d

20  197 (1983)(finding demurrer inappropriate in a case where parents alleged deceptive advertising

21  of sugar cereals).  Accordingly, the party seeking dismissal carries a heavy burden.  *Id.*

22          Despite this substantial burden on a defendant seeking dismissal of a California consumer

23  protection matter, Defendant seeks dismissal, claiming that its representations are "true."

24  Defendant is wrong on both the law and the facts.

25  _____

26          [6] *See* Def. Mem. at 9 ("Unless Rosen is prepared to allege that Unilever's labels ***violate***
    FDA regulations – which he cannot do without trespassing Rule 11 – the Court must presume that
27  the product labels proclaiming '0 g Trans Fat' comply with the NLEA.  By ***complying*** with
    federal law they cannot ***violate*** state law.") (emphasis in original).

28

OPPOSITION TO MOTION TO DISMISS
Case No.  C-09-02563 JW                                                                          14

With respect to the law, the Supreme Court of California has made clear that the consumer protection laws at issue here "prohibit 'not only advertising which is false, but also advertising which *although true*, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Kasky v. Nike, Inc.,* 27 Cal. 4th 939, 951 (2002) (emphasis added). In fact, "[a] perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL." *Morgan v. AT&T Wireless Services, Inc.*, 177 Cal. App. 4th 1235, 1255 (2009). Accordingly, Defendant's claim of "truth" as a defense is misplaced and inappropriate.

Instead, the question is whether the challenged statements have "a capacity, likelihood or tendency to deceive or confuse the public." *Id.* at 951. Here, Defendant's representation that an ingredient is "nutritious" when in fact it is not because it poses serious risks to one's health, certainly falls within the realm of have a likelihood or tendency to confuse or deceive.

Second, Defendant's argument grossly mischaracterizes the Complaint. Specifically, Defendant argues that Plaintiff is challenging "a claimed omission, namely, Unilever's alleged failure to specify the exact preserving quantum of TFAs [trans-fatty acids]." Def. Mem. at 9. As seen above, this is completely wrong. The Complaint simply does not anywhere challenge this statement regarding the amount of trans-fat that Defendant claims its Product has.

Likewise, Defendant's argument that an asterisk by the term "Nutritious Oils" on the packaging of its product somehow absolves it of liability is similarly misplaced. Specifically, in fine print by the asterisk at the bottom of the packaging it states: "A blend of soybean and canola oils. Contains 420 mg of Omega ALA per serving." This purported "disclaimer" is itself deceptive because it misleads one to believe that the product contains soybean and canola oils in their natural states which are not dangerous. However, the product does not contain these oils in their natural states, but instead in an artificial hydrogenated state, which, as stated by the Harvard School of Medicine (as quoted in the Complaint) poses a serious health risk.

E.      **PLAINTIFF'S CLAIMS ARE NOT PREMISED ON PUFFERY**

Defendant argues that its misleading statements regarding its oils being "nutritious," and that its Product is healthier than butter, are no more than meaningless "puffery." (Def. Mem. at 11). Defendant is wrong.

Puffery is "described as 'involving outrageous generalized statements, not making specific claims, that are so exaggerated as to preclude reliance by consumers." *Cook, Perliss, & Liehe, Inc. v. N. Cal. Collection Service*, 911 F.2d 242, 246 (9th Cir. 1990).  "Conversely, misdescriptions of specific or absolute characteristics of a product are actionable." *Id.*  A statement is considered puffery only if such a statement is "extremely unlikely to induce consumer reliance." *Newcal Indus. v. Ikon Office Solutions*, 513 F.3d 1038, 1053 (9th Cir. 2008).

Here, the claim that the Product is made with "Nutritious Oils", therefore rendering it superior to products such as butter, is description of a specific characteristic of the product.  It speaks directly to the quality of the Product.  Indeed, Defendant argues in another section of its Motion that its "nutritious" representation is a true statement of fact and that it "is not some abstract statement." (Def. Mem. at 9-10).   This conflict within Defendant's brief underscores the lack of merit to Defendant's "puffery" argument.

Morever, the very cases cited by Defendant demonstrate that Defendant's puffery argument must be rejected.  For example, Defendant cites to *Williams v. Gerber Prods, Co*. in support of its argument.  However, in *Gerber*, the Ninth Circuit rejected the argument that the term "nutritious" was mere puffery, and instead found that it could form the basis of the same consumer protection claims at issue here.  In reversing the lower court's decision to dismiss the action, the Ninth Circuit held that:

> Given the context of this statement, we decline to give Gerber the benefit of the doubt by dismissing the statement as puffery…. "It is not difficult to choose statements, designs, and devices which will not deceive."

*Gerber*, at 939, fn.3 (quoting *United States v. Ninety-Five Barrels More or Less of Alleged Apple Cider Vinegar*, 265 U.S. 438, 443, 44 S. Ct. 529, 68 L. Ed. 1094 (1924)).

Defendant's citation to *Pelman v. McDonald's Corp.*, 237 F. Supp. 512 (S.D.N.Y. 2003) is also misplaced.  Specifically, the district court's dismissal in *Pelman* was essentially overruled

by the Second Circuit in *Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005). Specifically,

the Second Circuit reversed the lower court and held the following claims to be actionable:

> [T]he plaintiff alleged that…the combined effect of McDonald's various promotional representations …***was to create the false impression that its food products were nutritionally beneficial and part of a healthy lifestyle if consumed daily. [The Complaint] alleges that McDonald's failed adequately to disclose that its use of certain additives and the manner of its food processing rendered certain of its foods substantially less healthy than represented***…. The amended complaint further alleges that as a result of these deceptive practices, plaintiffs, who ate at McDonald's three to five times a week throughout the years in question, were "led to believe[] that [McDonald's] foods were healthy and wholesome, not as detrimental to their health as medical and scientific studies have shown, . . . [and] of a beneficial nutritional value," and that they "would not have purchased and/or consumed the Defendant's aforementioned products, in their entirety, or on such frequency but for the aforementioned alleged representations and campaigns."

*Id.* at 510 (emphasis added).

Underscoring the facts that Defendant's misrepresentations are not "mere puffery" is the

fact that Defendants spent millions of dollars in marketing and advertising to convey the message

that its Product contained "a blend of nutritious oils," and consequently, was superior to its

competitors products. ¶ 3.[7]

## F.    **EACH OF PLAINTIFFS' CLAIMS ARE SUFFICIENTLY PLED**

To hold California consumer protection claims to the pleading standard of fraud claims, as

Defendant urges (Def. Mem. at 12), would undermine their remedial purpose. Accordingly,

many courts have rejected a heightened pleading standard for the consumer protection claims at

issue here. *See*, *e.g.*, *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1097 (N.D. Cal. 2006)

(holding Rule 9(b) inapplicable in California consumer protection action; "To require that

plaintiffs prove more than the statute itself requires would undercut the intent of the legislature in

creating a remedy separate and apart from common-law fraud"); *Faigman v. AT&T Mobility LLC*,

---

[7] 21 C.F.R. § 101.13(j) does not save Defendant (Def. Mem. at 15) with respect to its comparison to butter claims as it specifically prohibits labeling claims that "cause consumer confusion when compared." 21 C.F.R. § 101.13(j)(ii)(B). As alleged in the Complaint and discussed herein, Defendant's representations cause consumer confusion in misrepresenting the quality of its Product.

No. 06-cv-04622, 2007 U.S. Dist. LEXIS 52192 (N.D. Cal. July 18, 2007) (denying motion to dismiss).

The recent decision by the Ninth Circuit in *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) cited by Defendant (Def. Mem. at 12), does not change this analysis.  In other words, as the Ninth Circuit held in *Kearns*, Rule 9(b) is applicable to UCL and CLRA claims *only when fraud is alleged*.  *Id.* at 1125 (9th Cir. 2009).  Accordingly, since *Kearns*, courts have held that non-fraud based consumer protection claims only have to meet the pleading standard of Federal Civil Procedure Rule 8(a), and that Rule 9(a) is inapplicable.  *See e.g. Shin v. v. BMW of N. Am.*, 09-cv-398 AHM, 2009 U.S. Dist. LEXIS 67994, **9-12  (C.D. Cal. July 16, 2009) (discussing Kearns and holding that 9(b) did not apply to non-fraud based UCL and CLRA claims alleged in complaint).  As explained by the Court in *Shin*:

> To be precise, Plaintiffs' claims are not "grounded in fraud." Defendant ignores the distinction between claims that are on the whole grounded in fraud and those in which only particular averments sound in fraud….The factual allegations underlying Plaintiffs' UCL and CLRA claims are not all based on fraud. Although paragraph 26 does allege BMW's knowledge, other of Plaintiffs' allegations describe non-fraudulent conduct. For example, they alleged that BMW "knew or should have known" that its alloy wheels were subject to premature cracking and that they "performed, or should have performed, testing. . . to determine that the wheels were subject to cracking." These allegations do not amount to a pleading  of "a unified course of fraudulent conduct," as Defendant implies. …Plaintiffs are not required to plead "reliance" and "materiality" with particularity, because those elements are grounded in the UCL's and CLRA's "as a result of" language and are thus distinct from the common law fraud element of "justifiable reliance."

*Id.*

Here, Plaintiffs' UCL, FAL and CLRA claims are not grounded in fraud or based on common law fraud elements.  As a result, Plaintiffs' allegations with respect to these claims need only satisfy the notice pleading standards of Rule 8(a).  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) ("[I]n a case where fraud is not an essential element of a claim…[a]llegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)").

1    Nonetheless, regardless of whether the consumer protection claims at issue here are

2  subject to Rule 8(a) or 9(b), Plaintiffs' allegations here meet both standards.   Accordingly,

3  Defendant's motion to dismiss on grounds of insufficiency must be denied.

4    Specifically, Rule 9(b) provides that, "[i]n alleging fraud…a party must state with

5  particularity the circumstances constituting the fraud." Fed. R. Civ. P. 9(b).  For claims subject to

6  Rule 9(b), a plaintiff must allege the "who, what, when, where, and how" of the alleged

7  fraudulent conduct.  *See Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

8    The allegations here meet this standard.  The Complaint alleges who ("defendant Unilever

9  United States Inc." "plaintiff Amnon Rosen") ¶¶1, 8; what ("I Can't Believe Its Not Butter") ¶1;

10  when ("once a month during the period June 2007 to April 2009") ¶8; where ("various grocery

11  stores such as Safeway, Lucky Supermarket and Albertsons that are located in the Sunnyvale,

12  California area") ¶8; and, how (misrepresenting to consumers on the packaging and marketing of

13  "I Can't Believe Its Not Butter" that it made of "nutritious oils," and therefore better than

14  competitor's products such as butter, when, in fact, it was not because it contains highly

15  unhealthy, non-nutritious partially hydrogenated oil) of the alleged misconduct.   ¶¶10-20.

16  Additionally, the Complaint contains copies of Defendant's packaging that contains the

17  misleading and deceptive statements.  ¶14.

18    These allegations are more than sufficient to meet the pleadings requirements of Rule

19  9(b).  *Moore*, 885 F.2d at 540.  As explained in *Murphy v. DirecTV, Inc.*, case no. 07-cv-6465

20  (C.D. Cal. May 9, 2008):

21     [Plaintiff's] allegations meet and/or exceed Rule 9(b) standards.  Contrary
    to [Defendants'] argument, [Plaintiff] has alleged the "who, what, where,
22    when and how" of [Defendants'] misrepresentations.   Specifically,
    [Plaintiff] has alleged that, commencing in August 2003 through the
23    present, [Defendant] has misrepresented to consumers at retail
    establishments such as Best Buy and Circuit City, via misleading and/or
24    incomplete packaging, that payment for its receivers effectuated a
    purchase rather than a lease.
25

26  *Id.* at 14 (attached as Exhibit A to the Declaration of Michael R. Reese in Support of Plaintiff's

27  Opposition to Defendant's Motion to Dismiss) ("Reese Declaration"); *see also Embry v. ACER*

28

OPPOSITION TO MOTION TO DISMISS
Case No.  C-09-02563 JW                                                                19

1   *America Corp.*, 09-cv-1808 JW (N.D. Cal. July 15, 2009) (denying motion to dismiss and holding

2   that complaint satisfied Rule 9(b)) (attached as Exhibit B to the Reese Declaration).[8]

3         Defendant also argues that it had no duty to disclose.  Def. Mem. at  13.  This also is

4   untrue.  As Defendants admit, a duty to disclose arises when either: (1) the defendant is in a

5   fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material

6   facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the

7   plaintiff; or (4) the defendant makes partial representations but suppresses some material fact.

8   Def. Mem. at 13 (citing *Alfaro v. Cmty. Hous. Improvement Sys. & Planning Ass'n*, 171 Cal. App.

9   4th 1356, 1382 (2009)).  Under prongs two, three and four, a duty arises when there is a

10  transaction between the parties without a fiduciary or confidential relationship.  *Embry* at *11

11  (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336-37 (1997)).  "Thus a duty to disclose may

12  arise when a party makes a partial representation or does not speak the whole truth."  *Embry*, at

13  *11 (citing *Intrieri v. Superior Court*, 117 Cal. App. 4th 72, 86 (2004)).

14        Here, Defendant made partial representations – *i.e.* that its Product was made with

15  "Nutritious Oils," and was therefore superior to similar products – but suppressed the fact that the

16  Product actually contained a highly unhealthy, non-nutritious oil.  This is "an allegation of a

17  partial representation sufficient to establish a duty to disclose under California law."  *Embry* at

18  *11.

19      **G.**    **PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF**

20        Defendant does not contest that the Complaint sufficiently states claims for injunctive

21  relief.  Instead, Defendant improperly submits a self-serving press release before the Court to

22  argue that injunctive relief is unnecessary because Defendant intends to remove the offending

23

24  [8] Defendant's citation to *Wright v. General Mills, Inc.*, case no. 08-cv-1532, 2009 U.S. Dist.

25  LEXIS 90576 (S.D. Cal. Sept. 30, 2009) is misplaced.  In *Wright*, the plaintiff did not plead the "who, what, when, where, how" but simply offered mere "labels and conclusions, and a formulaic

26  recitation of the elements of a cause of action."  *Id.* at 15.  Such is not the case here.  As seen in the Complaint, and discussed above, the Complaint does plead the "who, what, where, when and

27  how."  Furthermore, the Complaint cites to scientific literature to evidence the falsity of Defendant's representations regarding the quality of the oils that constitute its Product. ¶¶ 5, 10.

28

OPPOSITION TO MOTION TO DISMISS
Case No.  C-09-02563 JW

1      language and toxic ingredients. This, however, cannot serve as a reason for dismissal of

2      Plaintiff's injunctive relief claim.

3          First, it need be noted that the press release was not issued ***until almost two months after***

4      ***the Complaint had been filed.*** Accordingly, Plaintiffs' claim for injunctive relief is not

5      "unnecessary" as claimed by Defendant – ***in fact, it appears to have already forced Defendant to***

6      ***confront its deceptive, misleading and harmful conduct***.

7          Second, review of the press release reveals nothing more than a "promise" by Defendant

8      will, one unspecified day, remove the harmful ingredients. Coming from an entity that has

9      profited greatly off of false and deceptive behavior as Defendant is alleged to have done here, this

10      "promise" by Defendant is meaningless. It has no legal effect. Only a court order, or jury

11      verdict, based upon the injunctive relief sought in the Complaint, has meaning. Accordingly,

12      Defendant's motion to dismiss the injunctive relief claim must be denied.

13            **H.    DEFENDANT'S ARGUMENT REGARDING A CLRA DAMAGES CLAIM IS FRIVOLOUS BECAUSE NO SUCH CLRA CLAIM FOR DAMAGES IS STATED IN THE COMPLAINT**

14

15          Defendant moves to dismiss "Plaintiff's CLRA Damages Claim," arguing that no notice

16      had been sent. Def. Mem. at 15. This argument is frivolous. The Complaint clearly states that

17      no CLRA claim for damages has been made, but rather only injunctive relief is sought pursuant

18      the CLRA claim. As stated in Count III of the Complaint:

19          This cause of action is brought pursuant to the California Consumer Legal
20          Remedies Act, Cal. Civ. Code 1750, *et seq.* ("CLRA"). ***This cause of action does not seek monetary damages at this point, but is limited solely to injunctive relief.*** Plaintiff will amend this Class Action Complaint to
21          seek damages in accordance with the CLRA after providing the Defendant
22          with notice pursuant to Cal. Code 1782.

23      And as stated in the Prayer for Relief:

24          THEREFORE, Plaintiff prays for judgment as follows:

25          …For declaratory and injunctive relief only pursuant to California Civil
26          Code 1780, ***as Plaintiff through this Complaint at this point expressly does not seek any monetary type of relief pursuant to the CLRA.***

27

28

1    Accordingly, as it is crystal clear from the Complaint that no CLRA damages claim is alleged in

2    the Complaint, Defendant's motion to dismiss such a claim is erroneous.

3           Finally, Defendant do not contend, nor could it, that a claim for injunctive relief under the

4    CLRA can be made without pre-suit notice. Section 1782(d) of the California Civil Code

5    specifically allows for CLRA injunctive relief claims to be made without pre-suit notice.

6    1782(d) ("An action for injunctive relief brought under the specific provisions of Section 1770

7    *may be commenced without compliance with subdivision (a)* [*i.e.* **the CLRA notice**

8    **provision]"**).

9    **VI.    CONCLUSION**

10          For the reasons stated above, Plaintiff respectfully requests that Defendant's motion to

11   dismiss be denied in its entirety.

12   DATED: February 8, 2010                **REESE RICHMAN LLP**

13
                                            */s/ Michael R. Reese*
14                                          Michael R. Reese (Cal. State Bar. No. 206773)
                                            Kim E. Richman
15                                          Belinda L. Williams
                                            875 Avenue of the Americas, 18th Floor
16                                          New York, New York 10001
                                            Telephone: (212) 643-0500
17                                          Facsimile: (212) 253-4272

18                                          *Counsel for Plaintiff and the Proposed Class*

19

20

21

22

23

24

25

26

27

28