WILLIAM L. STERN (CA SBN 96105)
WStern@mofo.com
JANELLE J. SAHOURIA (CA SBN 253699)
JSahouria@mofo.com
MORRISON & FOERSTER LLP
425 Market Street, Suite 3200
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendant
UNILEVER UNITED STATES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AMNON ROSEN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNILEVER UNITED STATES, INC.,<br><br>Defendant. | Case No. CV 09-02563 JW<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Hearing Date: March 1, 2010<br>Time: 9:00 a.m.<br>Place: Courtroom 8, 4th Floor<br>Judge: Honorable James Ware<br>Action Filed: June 9, 2009 |

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................................ ii

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENTS IN REPLY ............................................................................................. 1

    A. Plaintiff's Claims Are Expressly Preempted. ........................................................ 1

    B. The Dormant Commerce Clause Bars These Claims. ........................................... 3

    C. The Court Should Abstain in Deference to the FDA. ........................................... 4

    D. *Cel-Tech* Bars Plaintiff's Sections 17200 and 17500 Claims. .............................. 5

    E. Unilever's Product Claims—"Made With A Blend of Nutritious Oils," and Nutritious Alternative to Butter—Are True. ........................................ 6

    F. Plaintiff's Claims Refer to Non-Actionable Puffery. ............................................ 6

    G. Plaintiff Has Not Pled His Claims with the Requisite Particularity. ..................... 7

    H. Plaintiff Is Not Entitled to Injunctive Relief. ........................................................ 9

    I. The Court Should Strike Plaintiff's CLRA Damage Claim. ............................... 10

III. CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Altria Group, Inc. v. Good*,
 129 S. Ct. 538 (2008) ..................................................................................................... 2, 3

*Ashcroft v. Iqbal*,
 __ U.S. __, 129 S. Ct. 1937 (2009) ............................................................................ 6, 9, 10

*Diaz v. Kay-Dix Ranch*,
 9 Cal. App. 3d 588 (1970) ................................................................................................ 4, 5

*Embry v. ACER Am. Corp.*,
 No. 09-cv-1808JW (N.D. Cal. July 15, 2009) ..................................................................... 8

*Farm Raised Salmon Cases*,
 42 Cal. 4th 1077, 1086 (2008) ............................................................................................. 3

*Fraker v. KFC Corp.*,
 No. 06-CV-01284, 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007) ....................................... 3

*Hoey v. Sony Elecs. Inc.*,
 515 F. Supp. 2d 1099 (N.D. Cal. 2007) ............................................................................... 9

*In re Apple & AT & TM Antitrust Litig.*,
 596 F. Supp. 2d 1288 (N.D. Cal. 2008) (Ware, J.) .............................................................. 9

*In re Paxil Litig.*,
 218 F.R.D. 242 (C.D. Cal. 2003) ......................................................................................... 5

*Jackson v. Balanced Health Prods., Inc.*,
 No. C 08-05584, 2009 U.S. Dist. LEXIS 48848 (N.D. Cal. June 10, 2009) ....................... 3

*Kearns v. Ford Motor Co.*,
 567 F.3d 1120 (9th Cir. 2009) .......................................................................................... 7, 8

*Mangindin v. Wash. Mut. Bank*,
 637 F. Supp. 2d 700 (N.D. Cal. 2009) (Ware, J.) ................................................................ 8

*Pelman v. McDonald's Corp.*,
 237 F. Supp. 2d 512 (S.D.N.Y. 2003) ................................................................................. 7

*Pelman v. McDonald's Corp.*,
 452 F. Supp. 2d 320 (S.D.N.Y. 2006) ................................................................................. 7

*Pike v. Bruce Church, Inc.*,
 397 U.S. 137 (1970) ........................................................................................................ 3, 4

*Puentes v. Wells Fargo Home Mortgage, Inc.*,
    160 Cal. App. 4th 638 (2008) ..................................................................................... 5

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) .................................................................................. 6, 7

*Wright v. Gen. Mills, Inc.*,
    No. 08cv1532 L(NLS), 2009 WL 3247148 (S.D. Cal. Sept. 30, 2009) ..................... 9

*Wyeth v. Levine*,
    129 S. Ct. 1187 (2009) ........................................................................................ 2, 3

**STATUTES & RULES**

15 U.S.C.
    § 1334(b) ................................................................................................................ 3

21 U.S.C.
    § 343-1(a)(3) .......................................................................................................... 1
    § 343-1(a)(5) .......................................................................................................... 2

68 Fed. Reg. 41434 (July 11, 2003) ................................................................................ 4

68 Fed. Reg. 66046 (Nov. 25, 2003) ............................................................................... 4

72 Fed. Reg. 66103 (Nov. 27, 2007) ............................................................................... 6

Fed. R. Civ. P.
    23(b)(2) .................................................................................................................. 5

Cal. Civ. Code
    § 1782 .................................................................................................................. 10

**OTHER AUTHORITIES**

*Multi-Pronged FOP Food Labeling Effort Hinges On Science-Based Criteria*,
    FDA Week, Feb. 5, 2010 ........................................................................................ 5

## I. INTRODUCTION

Briefing can sometimes focus the issues for decision. And so it has here.

Plaintiff Amnon Rosen ("Rosen" or "Plaintiff") does not deny that he is suing Unilever for false advertising over product labels that do not disclose the precise levels of trans fatty acids ("TFAs") even though they are below the levels for which the FDA has required that a manufacturer "shall" disclose such amounts as "zero grams." All of Rosen's TFA-based claims are preempted or, if not, the Court should equitably abstain from entertaining claims that seek, as here, to "second-guess" the FDA. Alternatively, under the authority of the Dormant Commerce Clause, this Court should reject this Private Surgeon General's attempt to establish a California-only disclosure regime for food products that contain just trace amounts of TFAs.

Even if Plaintiff were to get past those hurdles, he has failed to allege his claims with particularity and should be ordered to replead the "who, what, when, where, and how." Finally, the Court should strike Plaintiff's injunctive relief prayer and his "damage" allegations under the Consumer Legal Remedies Act.

## II. ARGUMENTS IN REPLY

### A. Plaintiff's Claims Are Expressly Preempted.

In its Opening Memorandum ("Open. Mem."), pages 3 to 7, Unilever showed that Plaintiff's attacks on the product label, including the phrase "Made With A Blend of Nutritious Oils," seek to use state law to impose a disclosure/labeling standard that is "not identical to" the standard the FDA requires manufacturers to use for foods that contain TFAs at levels below "half a gram." As such, his claims are expressly preempted under 21 U.S.C. § 343-1(a)(3).

Plaintiff disagrees. His principal argument is that his allegations have nothing to do with TFAs. (Plaintiff's Opposition ("Opp."), 7:1-4.) Rather, he says, he is suing over "deceptively convey[ing] to consumers" that the product is "nutritious and healthy" when it is not. (*Id.*, 7:12-26.) Plaintiff is wrong.

First, he is impeached by his own Memorandum and Complaint. The Complaint is all about TFAs. Undergirding all of the claims is Rosen's charge that the "I Can't Believe It's Not Butter!"® product is *not* "nutritious" or "healthy" *because* it contains TFAs.

1     Rosen concedes this in the second paragraph of the Introduction.  As he puts it, "the oils are not nutritious, but rather contain highly unhealthy partially hydrogenated oil. . . ." (Opp., 1:15-16; *see also* 7:24-26.)  And in his Complaint, the connection to TFAs is unmistakable:  "Defendant's representations are misleading and deceptive *because* "'I Can't Believe It's Not Butter!' is not nutritious or healthy as represented because it contains dangerous, unhealthy, non-nutritious partially hydrogenated oil."  ((Compl. ¶ 8 (emphasis added); *see also id.* ¶ 4 ("nutritious blends" language "is misleading and deceptive because Defendant's Product contains a highly unhealthy, non-nutritious oil known as *partially hydrogenated oil*").)  For Rosen to insist that he is not complaining about TFAs, but rather Unilever's statement about "nutritious oils," requires a large suspension of disbelief.

    <u>Second</u>, Rosen does not dispute that the label's reference to "nutritious oils" directs the reader to the statement that discloses "Excellent Source of Omega 3 ALA," nor does he dispute that Omega 3 ALA *is* a "nutritious" oil.  Thus, the ingredient he *is* challenging as non-nutritious can only be the oil containing trace amounts of TFAs—the partially hydrogenated vegetable oil—but this exists in concentrations, he concedes, that are at levels below the FDA's safe-harbor "half gram" threshold.  (Opp., 7:2-7.)  So, through his omission claim—that Unilever fails to disclose that the product is *un*healthy—Rosen is indeed challenging the labeling of trace levels of TFAs that fall under the FDA's mandate.

    <u>Third</u>, although he arrived by a circuitous path, Rosen has walked himself into express preemption.  He concedes that the FDA regulates disclosure of TFA content on the product labels, and that anything "not identical to" that rule is preempted.  (Opp., 6:7-13; n.3); *see* 21 U.S.C. § 343-1(a)(5).  He has established, better than Unilever could, why his claims are preempted.

    Rosen contends that the "strong presumption against preemption" ought to apply here, and he cites *Wyeth v. Levine*, 129 S. Ct. 1187 (2009) and *Altria Group, Inc. v. Good*, 129 S. Ct. 538, 543 (2008).  (Opp., 5:4-10:27.)  But those cases support preemption on our facts.  At issue in *Wyeth* was the adequacy of a prescription drug labels.  The Supreme Court explained, "[i]f Congress thought state-law suits posed an obstacle to its objectives, it surely would have enacted an express pre-emption provision at some point during the FDCA's 70-year history" related to

prescription drugs. *Wyeth*, 129 S. Ct. at 1200 (citations omitted). Ours is the case *Wyeth* was not, because Congress has done for TFA labeling what it did not do for prescription drug labeling.[1]

As Unilever showed in its Opening Memorandum, page 6, the California Supreme Court has implicitly recognized that TFA labeling claims are expressly preempted. In *Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1086 (2008), it noted that the district court in another TFA-based case properly dismissed those claims on preemption grounds (citing *Fraker v. KFC Corp.*, No. 06-CV-01284, 2007 WL 1296571, at *3-4 (S.D. Cal. Apr. 30, 2007)). Although Rosen otherwise cites *Farm Raised Salmon*, he never addresses this aspect, perhaps hoping that by ignoring the California Supreme Court's observation about *Fraker*, this Court will too.

Rosen dismisses *Fraker* as irrelevant (Opp., 9:1-19), yet it found preemption of TFA-based claims that are indistinguishable from the claims made here. Not only did the *Fraker* court find preemption of California statutory claims, it found that the language need not explicitly mention TFAs for preemption to arise.[2] *Fraker*, 2007 WL 1296571, at *3-4.

Rosen also cites a series of cases finding no preemption that have nothing to do with TFA labeling. (Opp., 9:20-10:21.) Those have no bearing here. Unlike TFA labeling, there is no express preemption of claims concerning such things as use of the word "natural."

The Court should dismiss with prejudice all of Plaintiff's TFA-based claims.

**B.     The Dormant Commerce Clause Bars These Claims.**

Plaintiff contends that the Dormant Commerce Clause does not arise here, and that *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970) is inapplicable as well. But in doing so, he merely

---

[1] *Altria Group* lies even farther afield. Preemption is fact- and statute-specific. *Altria* involved a different preemption statute, not the NLEA (as here) but the differently worded Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1334(b), which was held in *Altria Group* not to preempt a claim brought under Maine's consumer protection act. *Altria Group, Inc.*, 129 S. Ct. at 543, 551.

[2] Plaintiff relies on *Jackson v. Balanced Health Products, Inc.*, No. C 08-05584, 2009 U.S. Dist. LEXIS 48848, at *10 (N.D. Cal. June 10, 2009) for the proposition that *Fraker* is distinguishable. (Opp., 9:20-28.) Yet, *Fraker* was a TFA preemption case. *Jackson* involved dietary weight loss supplements. There is no express preemption clause in the FDCA for dietary supplements. *Jackson*, 2009 U.S. Dist. LEXIS 48848, at *8. There is an express preemption clause for TFAs.

1  repeats his contention that the Complaint does not explicitly challenge the FDA's regulation of
2  TFAs. (Opp., 11:19-28.) As discussed in the prior Section, because Plaintiff is trying to use
3  California law to regulate the disclosure of TFAs in product labeling, the rule he seeks would be a
4  California-only rule, hence the balancing test laid out in *Pike* requires dismissal of this action.
5  (*See* Open. Mem., 7:5-19.)

6       **C.**     **The Court Should Abstain in Deference to the FDA.**

7  In the alternative, Unilever has asked the Court to abstain. (Open. Mem., 8:1-9:3.)
8  Plaintiff opposes, saying this is really a disguised preemption claim, and repeats his no-
9  preemption argument. (Opp., 12:3-6.) Plaintiff is wrong.

10  Courts often abstain even if a claim is not preempted. In *Diaz v. Kay-Dix Ranch*, 9 Cal.
11  App. 3d 588 (1970), the plaintiffs were legal aliens who sought an injunction against three
12  California ranch owners to stop them from employing illegal aliens as farm workers. They
13  alleged that the Immigration and Naturalization Service ("INS") was not doing its job of halting
14  the influx of illegal aliens. The *Diaz* court denied injunctive relief because federal action through
15  the INS would be more efficacious: "It is more orderly, more effectual, less burdensome to the
16  affected interests, that the national government redeem its commitment. Thus the court of equity
17  withholds its aid." *Id.* at 599.

18  Here, Rosen does not dispute that the FDA is still investigating whether to further regulate
19  label declarations of TFAs. Nor does he dispute the finding in the FDA's final report noting that
20  while TFAs "may raise blood cholesterol levels," "saturated fats"—such as butter—may be
21  worse. *See* 68 Fed. Reg. 41434, 41442 (July 11, 2003) (attached at RJN, Ex. G [Dkt. 22-7]).
22  That report shows there are no simple answers.

23  The phrase "Made With A Blend of Nutritious Oils" is a "dietary guidance" claim, which
24  in FDA parlance is a claim that represents a food (here, oils) as having a general health benefit
25  ("nutritious"). In 2003, the FDA issued an "Advance Notice of Proposed Rulemaking" that
26  began the process of regulating such claims. 68 Fed. Reg. 66040, 66046 (Nov. 25, 2003)
27  (attached as Exhibit I to the concurrently-filed Supplemental Request for Judicial Notice ("Supp.
28  RJN").)

Just last week, FDA representatives announced that the FDA "intends to release next month a proposed rule on dietary guidance statements that defines the term and issues criteria regarding when manufacturers can make certain claims." *Multi-Pronged FOP Food Labeling Effort Hinges On Science-Based Criteria*, FDA Week, Feb. 5, 2010. (Supp. RJN, Ex. J.) Thus, FDA is likely to further occupy the field in which "dietary guidance" claims are made.

Allowing Plaintiff to "regulate" in an area in which the FDA has chosen not to tread and is about to release a "guidance" would be a mistake. As Judge Pfaelzer noted in a similar context, a plaintiff should not be allowed to "use the Court as a forum to challenge and to second-guess" a decision of the FDA. *In re Paxil Litig.*, 218 F.R.D. 242, 248 (C.D. Cal. 2003).[3]

Even if Plaintiff's claims are not preempted, the Court should abstain.[4]

**D.     *Cel-Tech* Bars Plaintiff's Sections 17200 and 17500 Claims.**

Plaintiff says that the "*Cel-Tech*" safe harbor does not bar the UCL and FAL claims. (Opp., 13:9-12.) He says that the FDA has not permitted Unilever's conduct. (Opp., 13:9-14:5.) But as noted above, the FDA requires food manufacturers to state "0 g Trans Fat" for trace amounts of TFAs below half a gram of trans fat and Unilever does not have to disclose anything to the contrary, especially with its "nutritious blends" phrase. *See Puentes v. Wells Fargo Home Mortgage, Inc.*, 160 Cal. App. 4th 638, 644-46 (2008) (plaintiff cannot state a UCL claim against

---

[3] That Judge Pfaelzer was speaking of class certification and not a motion to dismiss in no way diminishes the observation. Indeed, the result was that the court refused to certify even an injunctive-relief class under Fed. R. Civ. P. 23(b)(2). *Paxil*, 218 F.R.D. at 248 ("Prudent exercise of that discretion requires a denial of Plaintiffs' motion to certify the Equitable Relief Class."). Unilever is asking for nothing different; like the court in *Paxil*, this Court should decline its equity jurisdiction to host a claim that seeks to "second-guess" the FDA. Furthermore, Plaintiff's attempt to distinguish *Paxil* as involving an "unusual manner" of litigating fails. *Id.* (Opp., 12 n.5.) The court in *Paxil* recognized that it "has limited discretion to control how individual Plaintiffs choose to try their case, but it has broad discretion to determine the appropriateness of allowing particular individuals to bind others to the same result." 218 F.R.D. at 248. Hereto this Court cannot control how a case is tried, but does have the authority to rule in favor of abstention to the FDA.

[4] Rosen says abstention should be rejected because he seeks no monetary relief. (Opp., 2:14-21.) But he cites no authority, and it conflicts with *Diaz* and other cases in which courts have abstained in the face of a claim seeking injunctive relief only.

1 bank where its interest rate calculations complied with the requirements of the Federal Reserve
2 Board).

3     Unilever's ICBINB! label complies with federal law. As such, it cannot violate state law.

### E. Unilever's Product Claims—"Made With A Blend of Nutritious Oils," and Nutritious Alternative to Butter—Are True.

In its Opening Memorandum, Unilever showed why its product claims are true. (Open. Mem., 9:18-10:26.) Plaintiff disagrees, but none of his arguments is persuasive.

Plaintiff cannot contend that the phrase "Made With A Blend of Nutritious Oils," and comparisons to butter are not true. ICBINB! contains "Omega 3" oil (alpha-linolenic acid) and has less saturated fat than butter.[5] As the FDA has found, and Rosen does not contest, the FDA has found that nutrient to be essential in the human diet. 72 Fed. Reg. 66103, 66105 & n.3 (Nov. 27, 2007) (attached at RJN, Ex. H [Dkt. 22-8]). More telling, the statement about "nutritious oils" is false only if the Court were to accept Plaintiff's premise that they are false only because the product contains trace levels of TFAs in amounts less .5 gram per serving—the very circumstance where the FDA mandates that the disclosure "*shall*" be "zero" grams. This is just another example of how Rosen needs to elbow aside the FDA in his quest to become a "Private Surgeon General."

Plaintiff also argues that the truthfulness of a statement cannot be decided on a motion to dismiss. (Opp., 14:7-15:25.) But *Williams* shows that to be incorrect. 552 F.3d at 939.

### F. Plaintiff's Claims Refer to Non-Actionable Puffery.

Plaintiff takes issue with Unilever's contention that the "nutritious oils" phrase and comparing ICBINB! to butter, are non-actionable puffery. Again, Plaintiff is wrong.

Plaintiff's principal contention is that the term "nutritious oils" "speaks directly to the quality of the Product" and is a "specific characteristic of the product," and therefore, cannot be

---

[5] Where, as here, "the primary evidence in a false advertising case is the advertising itself" (*Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citation omitted)), the Court may decide for itself whether the statements are actionable. A court need not accept as true a plaintiff's characterization, especially where it is belied by the actual words themselves. *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949-50 (2009).

1  puffery. (Opp., 16:12-13.) But "nutritious" is just an adjective; it is not a quantitative statement
2  subject to testing such as, for example, "29% faster" or "50% more." *Williams*, 552 F.3d at 939
3  n.3 ("nutritiousness can be difficult to measure concretely"). And as Unilever showed in its
4  Opening Memorandum, pages 11 to 12, numerous cases have found to the contrary, i.e., that the
5  adjective "nutritious" is mere puffery.[6]

6  Finally, Rosen contends that *Williams v. Gerber* supports him. Again, Plaintiff is wrong.
7  In footnote 3, the Ninth Circuit noted that "Gerber's claim that Snacks is 'nutritious,' were it
8  standing on its own, could arguably constitute puffery, since nutritiousness can be difficult to
9  measure concretely." 552 F.3d at 934 n.3. As it happened, in that case (unlike here) Gerber's
10 label was misleading on its face, hence the Ninth Circuit was unwilling to allow a puffery
11 defense. Here, Unilever's labels *do* stand on their own and are truthful, not false.

12 The same is true of Plaintiff's contention that Unilever makes misleading comparisons to
13 butter. The FDA has itself found that "saturated fats"—such as the fats in butter—have been
14 shown to increase levels of blood cholesterol more than TFAs. (*See* RJN, Ex. G [Dkt. 22-7].)

**G.     Plaintiff Has Not Pled His Claims with the Requisite Particularity.**

16 Plaintiff has failed to plead his claims with particularity. He asserts that he does not have
17 to do so because he does not assert fraud. (Opp., 17:18-18:28.) He is wrong again.

18 Rosen cites cases that have suggested only fraud claims need be alleged with particularity.
19 But all of them predate *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009). There, the
20 Ninth Circuit held that claims brought *under the "fraudulent" prong of the UCL and CLRA* must
21 be pled with particularity under Rule 9(b). *Id.* at 1125. This applies also to omissions cases.

---

[6] Plaintiff says that Unilever's reliance on *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512 (S.D.N.Y. 2003) is misplaced because the case was "essentially overruled." (Opp. 16:27-17:12.) Not so. The Second Circuit did not analyze the puffery issues on appeal. Furthermore, following remand the court pointed out that "Plaintiffs' allegation with respect to McDonald's Mighty Kids Meal 'is mere puffery rather than any claim that children who eat a 'Might[y] Kids Meal' will become mightier.' *Pelman*, 237 F. Supp. 2d at 530. On appeal, the Second Circuit did not disturb these rulings. As such, these rulings constitute the law of the case, and Plaintiffs are precluded from revisiting these allegations." *Pelman v. McDonald's Corp.*, 452 F. Supp. 2d 320, 327 (S.D.N.Y. 2006).

1 *Id*. 1126.[7] In *Mangindin v. Washington Mutual Bank*, 637 F. Supp. 2d 700, 710 (N.D. Cal. 2009) (Ware, J.) this Court dismissed UCL claims by mortgage borrowers who had alleged "bait and switch" tactics by the lender in only conclusory fashion. Said the Court:

> Allegations under Rule 9(b) must be stated with "specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the mis-representations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007); *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994). The pleading must be "specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation omitted).

637 F. Supp. 2d at 706.

Rosen disagrees. Citing *Kearns*, he insists that a UCL or CLRA claim need be pled with particularity "***only when fraud is alleged***." (Opp., 18:5-6 (emphasis in original).) But *Kearns* says no such thing. The actual holding in *Kearns* appears on the next page:

> While fraud is not a necessary element of a claim under the CLRA and UCL, a plaintiff may nonetheless allege that the defendant engaged in fraudulent conduct. A plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim. *In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading ... as a whole must satisfy the particularity requirement of Rule 9(b).*

567 F.3d at 1125 (internal citation omitted) (emphasis added).

*Kearns* is instructive. It highlights how far Rosen's averments deviate from the sort of particularity that is necessary. In that case, Mr. Kearns (who was suing under the UCL and CLRA) failed to "specify what the television advertisements or other sales material specifically stated. Nor did Kearns specify when he was exposed to them or which ones he found material. Kearns also failed to specify which sales material he relied upon in making his decision to buy a CPO vehicle." *Id.* at 1126. The court could have been speaking of Rosen's averments here.

---

[7] To the extent this Court in *Embry v. ACER America Corp.*, No. 09-cv-1808JW, (N.D. Cal. July 15, 2009) believed that omissions claims fall outside the particularity requirement, that is no longer good law after *Kearns*.

1    This Complaint alleges that Rosen bought the product at least once a month for two years, that he relied on the packaging "as well as Defendant's widespread advertising and marketing" (*see* Compl. ¶ 8), and it describes the advertisements that Unilever allegedly broadcast. (Compl. ¶¶ 15-19.) But to paraphrase the Ninth Circuit, Rosen does not specify "which [ads or labels] *he* found material. [Rosen] also failed to specify *which* sales material *he* relied upon in making his decision to buy. . . ." Nor does Rosen allege whether it was the ads as opposed to the product label (only limited to ICBINB! Original) on which he relied in making his purchasing decisions.

In addition, Rosen fails to allege with particularly the basis for Unilever's duty to disclose. *Cf. In re Apple & AT & TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1311 (N.D. Cal. 2008) (Ware, J.) (UCL claim in omission case dismissed for failure to plead with particularity a duty to disclosure); *accord Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1104 (N.D. Cal. 2007).

The post-*Kearns* decision that most closely resembles our facts is *Wright v. General Mills, Inc.*, No. 08cv1532 L(NLS), 2009 WL 3247148 (S.D. Cal. Sept. 30, 2009). There, the district court found that the plaintiff failed to meet the *Twombly* and *Iqbal* pleading standards based on allegations similar to those alleged here. All the plaintiff alleged was that "[a]s a direct result of its misleading, deceptive, untrue advertising ... Defendant caused Plaintiff and other members of the Class to purchase, purchase more of, or pay more for, these Nature Valley products." *Id.*, at *5 (citation omitted). That was insufficient. So are the averments here.[8]

**H.    Plaintiff Is Not Entitled to Injunctive Relief.**

Before Plaintiff filed his Complaint, Unilever had already undertaken to reformulate ICBINB! to reduce their already low levels of TFAs. The new ICBINB! Original product, which began circulating in August 2009, no longer contains partially hydrogenated oils or uses the phrase "Made With A Blend of Nutritious Oils" on its product labels or advertisements. (RJN, Ex. C [Dkt. 22-3].) The conversion process began before this lawsuit was filed. Plaintiff has failed to plead with particularity any facts showing the conduct is likely to recur, as required by

---

[8] Loading up one's complaint with extracts from scientific literature is no substitute for pleading a claim with particularity. (*Cf.*, Opp., 20 n.8.)

1  *Iqbal*, 129 S. Ct. at 1949-50, and Unilever has already shown its commitment to fulfilling the promises made in its press release. (RJN, Ex. B [Dkt. 22-2].)

### I.   The Court Should Strike Plaintiff's CLRA Damage Claim.

We finally come to an issue on which the parties agree. Plaintiff did not provide the requisite notice under Cal. Civ. Code § 1782 before filing the lawsuit. (Compl. ¶ 50.) As Unilever showed in its Opening Memorandum, at pages 14-15, numerous federal courts have held that the 30-day letter must *precede* the complaint—not come after it.

Plaintiff does not disagree. Rather, he states that "no CLRA claim for damages has been made." (Opp., 21:16-17.) Yet, he also says that it may seek damages after serving a notice. (Compl. ¶ 50; Opp., 21:19-22.) That is exactly what Plaintiff may *not* do. The Court should strike paragraph 50 of the Complaint without leave to amend.

### III.   CONCLUSION

This Court should dismiss the Complaint with prejudice. In the alternative, it should dismiss the CLRA damage claim and require Plaintiff to plead his claims with particularity.

Dated:  February 12, 2010

WILLIAM L. STERN
JANELLE J. SAHOURIA
MORRISON & FOERSTER LLP

By: /s/ William L. Stern
William L. Stern

Attorneys for Defendant
UNILEVER UNITED STATES, INC.